**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

| | |
|---|---|
| BRIGHTPICK INC., <br><br> Plaintiff, <br><br> v. <br><br> OCADO INNOVATION LTD. AND OCADO SOLUTIONS LTD., <br><br><br> Defendants. | Case No. <br><br> **JURY TRIAL DEMANDED** |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff Brightpick Inc. seeks a declaratory judgment that it does not infringe United States Patent Nos. 10,035,651, 10,759, 597, 10,829,302, 11,273,980, 11,485,574, 11,505,405, and 12,172,832, and alleges as follows:

## NATURE OF THE ACTION

1. This is an action for declaratory judgment of non-infringement arising under the patent laws of the United States, Title 35 of the United States Code. Brightpick requests this relief because defendants have recently accused Brightpick's Gridpicker system of infringing its U.S. Patent Nos. 10,035,651 (the "'651 patent"), 10,759,597 (the "'597 patent"), 10,829,302 (the "'302 patent"), 11,273,980 (the "'908 patent"), 11,485,574 (the "'574 patent"), 11,505,405 (the "'405 patent"), and 12,172,832 (the "'832 patent") (collectively, the "Patents-in-Suit"). Defendants' allegations in the U.S. are part of a broader campaign to cast a cloud of uncertainty over Brightpick's business. Defendants' accusations have impacted and continue to impact

– 1 –

Brightpick's business and relationships with customers and potential customers, creating a justiciable controversy between Brightpick and defendants.

## THE PARTIES

2. Plaintiff Brightpick Inc. ("Brightpick") is a company organized and existing under the laws of the State of Delaware, with a principal place of business in Austin, Texas.

3. Brightpick is a wholly owned subsidiary of Brightpick s. r. o., a Slovakian company headquartered in Slovakia.

4. Brightpick provides AI-powered end-to-end warehouse fulfillment automation. Brightpick's solutions are suitable for a wide range of retailers, distributors, and manufacturers, in part because customers can use Brightpick's systems with traditional rack-and-aisle warehouse infrastructure, and thus do not need to spend the significant capital cost necessary to rebuild their warehouse. Brightpick's robots and automated fulfillment solutions are widely recognized as innovative, receiving numerous industry awards.

5. Defendant Ocado Innovation Ltd. ("Ocado Innovation") is a UK company headquartered at Buildings One & Two, Trident Place, Mosquito Way, Hatfield, Hertfordshire, AL10 9UL, United Kingdom.

6. Defendant Ocado Solutions Ltd. ("Ocado Solutions") is a UK company headquartered at Buildings One & Two, Trident Place, Mosquito Way, Hatfield, Hertfordshire, AL10 9UL, United Kingdom.

7. Ocado Innovation and Ocado Solutions (collectively "Ocado") are both wholly owned subsidiaries of Ocado Group PLC, a UK company.

8. Ocado conducts its business activities in the United States from its base of operations at 1600 Tysons Boulevard, Suite 400, Tysons Corner, Virginia, 22102. The Ocado

website lists this location, https://www.ocadogroup.com/about-us/our-locations, and this location is the headquarters of Ocado Solutions USA Inc., a Delaware corporation and a wholly owned subsidiary of Ocado Group PLC. Ocado Solutions USA Inc. sells and supports Ocado products and systems in the United States, and is responsible for United States marketing and sale of those products and systems. On information and belief, defendants have executed a non-exclusive license to the Patents-in-Suit with Ocado Solutions USA Inc. Ocado has also prosecuted some of the Patents-in-Suit using counsel in this District.

## JURISDICTION AND VENUE

9.      This action arises under the Declaratory Judgment Act, 28 U.S.C. § 2201, and under the patent laws of the United States, 35 U.S.C. §§ 1-390.

10.     This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331, 1338(a), and 2201(a). An actual, substantial, immediate, and continuing controversy exists between Brightpick and Ocado that requires a declaration of rights by this Court regarding the Patents-in-Suit.

11.     This Court has general and specific personal jurisdiction over all defendants under the laws of the State of Virginia and consistent with the underlying due process principles of the United States Constitution.

12.     Venue is proper in this District under at least 28 U.S.C. § 1391(b), because this district is where a substantial part of the events or omissions giving rise to the claim occurred or, in the alternative, 28 U.S.C. § 1391(c), because there is no district in which an action may otherwise be brought, and this Court has personal jurisdiction over Ocado.

– 3 –

## BACKGROUND

**A.    Brightpick's Groundbreaking Warehouse Automation Systems**

13.    Dr. Jan Žižka, Tomáš Kovačovský, Dr. Michal Malý, and Branislav Puliš founded Brightpick to provide complete automation solutions to the warehouse fulfillment industry.

14.    Brightpick's inaugural system, called Autopicker, uses robots which work like humans:  Autopicker robots can move through warehouses built for human workers, traveling back and forth in warehouse aisles and collecting goods from warehouse shelves to fulfill orders. Using advanced 3D vision and artificial intelligence, Autopickers can move more efficiently than human workers, and can work around the clock, even in complete darkness.

15.    Because Autopicker robots can move through warehouses built for human workers, the Autopicker system uses standard shelving in a traditional warehouse rack-and-aisle layout, so Brightpick's customers need not incur the significant upfront cost necessary to reconfigure their warehouse shelving.

16.    In 2024, Autopicker won multiple industry awards including the LogiMAT Best Product Award for Order Picking, Conveying, Lifting, Storage Technology, the E-commerce Germany Award for Best Fulfillment and Optimization Solution, and the Robotics & Automation Award for Best Use of Robotics or Automation in Healthcare.

**B.    Ocado's System of Stacked Containers, Addressable Only From the Top**

17.    Ocado also provides automated warehouse storage and retrieval systems.  But unlike Brightpick's technology, Ocado's system requires its customers to reconfigure their warehouses, removing all the aisles to allow for Ocado's grid of stacked containers.

18.    Ocado's robots stay above the contents of the warehouse, and manipulate stacks of containers, each directly on top of the one below it.  If an Ocado robot wants to pick an item

– 4 –

from a container below the top container in a stack, it must dig down for that container by lifting

the top container up into the robot, moving to another stack, putting that container down and making it the top container in the other stack, and repeating this process until the item it wants is in the top container of a



stack, similar to a child playing Towers of Hanoi.

### C.  Brightpick Announces Gridpicker

19.  On March 17, 2026, Brightpick announced a new groundbreaking robotic

fulfillment system, called Gridpicker.

20.  Like the Autopicker system, Gridpicker uses standard shelving in a traditional warehouse rack-and-aisle layout, with items stored on standard shelves, rather than stacked on top of each other as in Ocado's system.  Resting on each shelf are trays, called "totes," that hold items available for picking. Gridpicker robots can pick items from totes at the top shelf of each rack.  If a Gridpicker robot wants to





pick an item from a tote that is not at the top shelf of the rack, a separate robot, moving through the aisles that remain in the traditional warehouse rack-and-aisle layout, laterally pulls the desired tote from the shelf where it rests, and moves it up to the top level.  Unlike in Ocado's system, Gridpicker never has to dig down through a stack of containers addressable only from the top; because Gridpicker's totes rest on shelves rather than each other, any of them can move to the top shelf in a single action.  The Gridpicker system thus optimizes efficiency using artificial intelligence by orchestrating a careful robot waltz.

**D.     Ocado's Campaign Against Brightpick in Germany**

21.     Meanwhile, Ocado itself was suffering.  On February 26, 2026, *The Guardian* published a story by Sarah Butler entitled, "Ocado failing to deliver on its potential as one of UK's great technology hopes."  Ex. 1.  Among other things, the article quoted an Ocado staffer stating that "Before Covid, what we were building was absolutely at the front row in logistics.  During Covid, there was huge expansion and we lost technology leadership."  *Id.*  As the article explained, "Ocado's technology is not necessarily the first choice for retailers trying to take their share," because "large distribution centres, even those run super-efficiently with robots, are an expensive and inflexible option for managing deliveries."  *Id.*  After trading as high as £28.08 in 2021, Ocado's shares on the London Stock Exchange have fallen to £1.87.

22.     Unable to succeed in the marketplace, Ocado turned to patent assertion.

23.     Ocado first asserted its patent portfolio against Brightpick in Germany.

24.     Brightpick planned to exhibit its Gridpicker system at LogiMAT, a German trade show for intralogistics solutions and process management, starting on Tuesday, March 24, 2026.

25.    On March 23, at 12:49 a.m. local time, Ocado's German counsel sent an email to info@brightpick.ai attaching a "warning letter regarding patent infringement that requires immediate attention." Ex. 2. This email attached a letter dated March 22, 2026. *Id.*

26.    Ocado's March 23 letter stated that "we believe that the Gridpicker-System infringes on our client's patent **EP 3 374 291 B1 (EP 291). We hereby assert infringement of the German part of the EP 291 and request that Brightpick immediately refrains from further infringements and sign a cease-and desist declaration before <u>1pm CET on Monday, 23 March 2026</u>**." *Id.* ¶ 4 (emphasis in original). Ocado thus gave Brightpicker 12 hours and 11 minutes to respond. *See id.*

27.    Also on March 23, at 3:52 p.m. local time, Ocado filed in the Regional Court of Düsseldorf an *ex parte* application for an interim injunction against Brightpick Inc. and Brightpick s. r. o. Ex. 3.

28.    On March 24, before Brightpick could respond, the Regional Court of Düsseldorf granted Ocado's *ex parte* application.

29.    Later on March 24, Brightpick filed an opposition to the *ex parte* injunction, and the Court scheduled a hearing for May 19, 2026. But the *ex parte* injunction remained in effect.



30.    Brightpick immediately complied with the injunction by covering up its demonstration at the trade show, adding commentary to explain why they could not present their product.

31.     Ocado sent police to the trade fair; the officers concluded that Brightpick's covered-up display complied with the order, and left.

**E.     Ocado's Campaign Against Brightpick in the United States**

32.     Brightpick planned to exhibit its Gridpicker system at MODEX, a Georgia trade show for supply chain management, starting on Monday, April 13, 2026.

33.     Although Ocado knew of Brightpick's plans to exhibit at MODEX since at least March 23, it said nothing to Brightpick until Thursday, April 9.

34.     On April 9, 2026, Ocado's U.S. counsel sent a letter to Brightpick, claiming infringement of the Patents-in-Suit.  Ex. 4.  The letter referenced the German proceedings, noted that Brightpick "intends to present, display, demonstrate, and/or offer for sale the Gridpicker system—or a substantially similar product—at MODEX 2026, scheduled to take place from April 13-16," and stated that "Ocado takes the protection of its intellectual property extremely seriously and must act to safeguard its rights in every jurisdiction in which those rights are infringed." *Id.* at 1.  The letter further stated that "[i]t is essential that Brightpick address this issue immediately and provide a satisfactory response to this notice in advance of the MODEX trade show," and that "Ocado cannot allow unlicensed infringement of its portfolio to continue and is prepared to pursue all available lawful remedies." *Id.* at 3.  The letter concluded with a deadline:  "we require a response prior to the commencement of the MODEX trade show next week." *Id.*

35.     Brightpick brings this action to resolve Ocado's claims of infringement, and to seek a finding that Brightpick's products do not infringe the Patents-in-Suit.

**THE '651 PATENT**

36.     On July 31, 2018, the United States Patent and Trademark Office issued U.S. Patent No. 10,035,651 from Application No. 15/595,360, entitled "Storage Systems and Methods for Retrieving Units from a Storage System."  Ex. 5.

37.     The '651 patent concerns a "robotic system for handling bins in a store comprising a grid of stacked units."  *Id.* at 1:10-11.

38.     The '651 patent comprises eight claims, of which claims 1, 5, and 7 are independent.  *See id.* at 20:52 to 22:46.

39.     All three independent claims of the '651 patent require "a frame containing a plurality of stacks of containers."  *Id*. at 20:53, 21:23-24, 21:45-46.

40.     The specification similarly describes a storage architecture in which "stackable containers, known as bins 10, are stacked on top of one another to form stacks 12."  *Id*. at 2:39-41.

41.     Gridpicker does not use "a frame containing a plurality of stacks of containers." *Supra.*  Instead, Gridpicker uses standard shelving in a traditional warehouse rack-and-aisle layout, with items resting on shelves, rather than stacked on top of each other.

42.     For these and other reasons, Brightpick's Gridpicker system does not directly or indirectly infringe any claim of the '651 patent, literally or under the doctrine of equivalents.

43.     Brightpick has not infringed and does not infringe any claim of the '651 patent either directly, contributorily, or by inducement, literally or under the doctrine of equivalents, including through its making, use, importation into the United States, sale, or offer for sale of the Gridpicker systems, or any other Brightpick products.

## **THE '597 PATENT**

44.     On September 1, 2020, the United States Patent and Trademark Office issued U.S. Patent No. 10,759,597 from U.S. Patent Application No. 15/775,671, entitled "Robotic Picking Systems and Devices."  Ex. 6.

45.     The '597 patent comprises 24 claims, of which claims 1, 11, and 24 are independent.  *Id.* at 21:26 to 24:26.

46.     Independent claims 1 and 11 of the '597 patent require "movement of the device . . . such that the picking device may be positioned above a predetermined container to pick the item."  *Id.* at 21:46-51, 22:46-51.  As the specification explains, "the lifting means 44 of the picking device 230 is placed over a bin 10 in a stack 12 or in a picking area.  The lifting means 44 and bin gripper assembly 39 together lift the bin 10 in to the cavity 40 of the device 230, as shown in FIGS. 8c and 8d."  *Id.* at 10:25-29.



Figure 8c                                        Figure 8d

47.     Gridpicker does not use a "picking device" that is "positioned above a predetermined container to pick the item."  Instead, Gridpicker picks from a position that is laterally offset from the tote, not from above the tote.



48.     Independent claim 24 of the '597 patent requires "lifting means for lifting at least one container from beneath a grid into the container receiving space during operation."  Ex. 6 at 24:22-24.  Figures 8c and 8d show this "lifting means," above.

49.     Gridpicker does not use a "lifting means for lifting at least one container from beneath a grid into the container receiving space during operation."  Instead, as shown above, Gridpicker picks from a position that is laterally offset from the tote, without "lifting" the tote "into the container receiving space during operation."

50.     For these and other reasons, Brightpick's Gridpicker system does not directly or indirectly infringe any claim of the '597 patent, literally or under the doctrine of equivalents.

51.     Brightpick has not infringed and does not infringe any claim of the '597 patent either directly, contributorily, or by inducement, literally or under the doctrine of equivalents, including through its making, use, importation into the United States, sale, or offer for sale of the Gridpicker systems, or any other Brightpick products.

**THE '302 PATENT**

52.     On November 10, 2020, the United States Patent and Trademark Office issued U.S. Patent No. 10,829,302 from U.S. Patent Application No. 15/905,360, entitled "Apparatus for Retrieving Units From a Storage System."  Ex. 7.

53.     The '302 patent concerns an "apparatus for retrieving units form [sic] a storage system." *Id.* at 1:6-7.  The patent contemplates "robotic devices for handling storage containers or bins in a store comprising a grid of stacked units." *Id*. at 1:8-10.

54.     The '302 patent comprises nine claims, of which claims 1 and 5 are independent. *Id.* at 12:30 to 14:29.

55.     Claim 1 of the '302 patent requires "a framework for defining columns beneath the plural grid spaces for retaining plural stacks of containers located beneath the rails, and configured such that each stack will be located within a footprint of a single grid space." *Id*. at 12:35-39.

56.     Gridpicker does not use "a framework for defining columns beneath the plural grid spaces for retaining plural stacks of containers located beneath the rails, and configured such that each stack will be located within a footprint of a single grid space."  Instead, Gridpicker uses standard shelving in a traditional warehouse rack-and-aisle layout, with items resting on shelves, rather than stacked on top of each other.

57.     Claim 5 of the '302 patent requires a "load handling device" including "a container-receiving space configured to accommodate a container" and "a wheel assembly having a first set of wheels to be engaged with a first set of parallel rails or tracks of a storage system to guide movement of the device in a first direction and a second set of wheels to be engaged with a second set of parallel rails or tracks of the storage system to guide movement of the device in a second direction, wherein the first and second sets of wheels are arranged around a periphery of the container-receiving space and on an outer surface of the housing." *Id*. at 13:13-27.  Claim 5 thus requires the "container-receiving space configured to accommodate a container" to be on the bottom of the "load handling device," where the wheels are.  *See id.*

– 12 –

58.     Gridpicker does not use a "load handling device" wherein "first and second sets of wheels are arranged around a periphery of the container-receiving space and on an outer surface of the housing."  Instead, its tote exchange mechanism is based on side-access transfer mechanics:  internal tote platforms extend laterally from the robot body into a neighboring cell for loading.

59.     For these and other reasons, Brightpick's Gridpicker system does not directly or indirectly infringe any claim of the '302 patent, literally or under the doctrine of equivalents.

60.     Brightpick has not infringed and does not infringe any claim of the '302 patent either directly, contributorily, or by inducement, literally or under the doctrine of equivalents, including through its making, use, importation into the United States, sale, or offer for sale of the Gridpicker systems, or any other Brightpick products.

**THE '980 PATENT**

61.     On March 15, 2022, the United States Patent and Trademark Office issued U.S. Patent No. 11,273,980 from U.S. Patent Application No. 16/083,723, entitled "Method and Apparatus for Retrieving Units From a Storage System."  Ex. 8.

62.     The '980 patent comprises 38 claims, of which claims 1 and 20 are independent. *Id*. at 11:28 to 15:22.

63.     Both independent claims of the '980 patent require a "load-handling device for lifting and moving containers stacked in stacks in a storage system" with "each stack being located within a footprint of only a single grid space." *Id.* at 11:28-33; 13:29-34.

64.     The specification similarly describes a storage architecture in which "stackable containers, known as bins 10, are stacked on top of one another to form stacks 12." *Id.* at 2:38-40.

– 13 –

65.     Gridpicker does not use "a load-handling device for lifting and moving containers stacked in stacks in a storage system" with "each stack being located within a footprint of only a single grid space." *Supra.* Instead, Gridpicker uses standard shelving in a traditional warehouse rack-and-aisle layout, with items resting on shelves, rather than stacked on top of each other.

66.     For these and other reasons, Brightpick's Gridpicker system does not directly or indirectly infringe any claim of the '980 patent, literally or under the doctrine of equivalents.

67.     Brightpick has not infringed and does not infringe any claim of the '980 patent either directly, contributorily, or by inducement, literally or under the doctrine of equivalents, including through its making, use, importation into the United States, sale, or offer for sale of the Gridpicker systems, or any other Brightpick products.

**THE '574 PATENT**

68.     On November 1, 2022, the United States Patent and Trademark Office issued U.S. Patent No. 11,485,574 from U.S. Patent Application No. 16/979,270, entitled "Transporting Device Position Determining Apparatus and Method." Ex. 9.

69.     The '574 patent comprises 17 claims, of which claims 1, 13, and 17 are independent. *Id.* at 17:2-19:31.

70.     All three independent claims of the '574 patent require "a plurality of stacks of containers located beneath the rails, and arranged such that each stack is located within a footprint of a single grid space" or "the containers being stored in a facility, the facility being arranged to store the containers in a plurality of stacks." *Id.* at 17:13-15; 18:25-27; 19:8-10.

71.     The specification similarly describes a storage architecture in which "stackable containers, known as bins 10, are stacked on top of one another to form stacks 12." *Id.* at 1:42-44.

72.     Gridpicker does not use "a plurality of stacks of containers located beneath the rails, and arranged such that each stack is located within a footprint of a single grid space" or "the containers being stored in a facility, the facility being arranged to store the containers in a plurality of stacks." *Supra.* Instead, Gridpicker uses standard shelving in a traditional warehouse rack-and-aisle layout, with items resting on shelves, rather than stacked on top of each other.

73.     For these and other reasons, Brightpick's Gridpicker system does not directly or indirectly infringe any claim of the '574 patent, literally or under the doctrine of equivalents.

74.     Brightpick has not infringed and does not infringe any claim of the '574 patent either directly, contributorily, or by inducement, literally or under the doctrine of equivalents, including through its making, use, importation into the United States, sale, or offer for sale of the Gridpicker systems, or any other Brightpick products.

**THE '405 PATENT**

75.     On November 22, 2022, the United States Patent and Trademark Office issued U.S. Patent No. 11,505,405 from Application No. 17/094,023, entitled "Picking Systems and Methods." Ex. 10.

76.     The '405 patent comprises 20 claims, of which claims 1, 15, and 16 are independent. *Id.* at 22:6 to 24:47.

77.     All three independent claims of the '405 patent require "a first set of parallel rails or tracks and a second set of parallel rails or tracks extending substantially perpendicularly to the first set in a substantially horizontal plane to form a grid pattern with a plurality of grid spaces" or "a first set of parallel rails or tracks, and a second set of parallel rails or tracks extending substantially perpendicularly to the first set in a substantially horizontal plane to form a grid pattern with a plurality of grid spaces" (*id.* at 22:8-12, 23:16-20, 24:5-9), and "a robotic load

– 15 –

handling device containing at least one delivery container and configured to travel on the first and second sets of rails or tracks." *Id.* at 22:16-18, 23:23-25, 24:13-15.

78. All three independent claims of the '405 patent further require "a robotic picking device arranged to operate above the plurality of grid spaces." *Id.* at 22:23-24, 23:28-30, 24:21-22. The independent claims thus require two robots, both operating above the items stored in the warehouse.

79. Gridpicker does not use "a robotic load handling device containing at least one delivery container and configured to travel on the first and second sets of rails or tracks." *Supra.* Instead, Gridpicker uses standard shelving in a traditional warehouse rack-and-aisle layout, and robots that operate at the level of those shelves, bringing totes up to the top level when the Gridpicker robots need them, and removing them from the top level when they do not.

80. For these and other reasons, Brightpick's Gridpicker system does not directly or indirectly infringe any claim of the '405 patent, literally or under the doctrine of equivalents.

81. Brightpick has not infringed and does not infringe any claim of the '405 patent either directly, contributorily, or by inducement, literally or under the doctrine of equivalents, including through its making, use, importation into the United States, sale, or offer for sale of the Gridpicker systems, or any other Brightpick products.

**THE '832 PATENT**

82. On December 24, 2024, the United States Patent and Trademark Office issued U.S. Patent No. 12,172,832 from Application No. 18/401,196, entitled "Apparatus for Retrieving Units from a Storage System." Ex. 11.

83. The '832 patent comprises nine claims, of which claim 1 is independent. *Id.* at 12:28 to 14:19.

84. Independent claim 1 of the '832 patent requires "a container lifting device positioned in the housing and comprising a container-lift motor configured to lift a container into the container receiving space from a stack of containers within the grid frame beneath the top level." *Id.* at 12:49-53.

85. The specification similarly describes a storage architecture in which "stackable containers, known as bins 10, are stacked on top of one another to form stacks 12." *Id*. at 2:38-40.

86. Gridpicker does not use "a stack of containers within the grid frame beneath the top level." *Supra*. Instead, Gridpicker uses standard shelving in a traditional warehouse rack-and-aisle layout.

87. For these and other reasons, Brightpick's Gridpicker system does not directly or indirectly infringe any claim of the '832 patent, literally or under the doctrine of equivalents.

88. Brightpick has not infringed and does not infringe any claim of the '832 patent either directly, contributorily, or by inducement, literally or under the doctrine of equivalents, including through its making, use, importation into the United States, sale, or offer for sale of the Gridpicker systems, or any other Brightpick products.

## <u>COUNT I</u>

*(Declaration of Non-Infringement of the '651 Patent)*

89. Brightpick restates and incorporates by reference the allegations in paragraphs 1 through 88 of this Complaint as if fully set forth herein.

90. Ocado claims to own all right, title, and interest in the '651 patent.

91.    Brightpick and its products, including Brightpick's Gridpicker, do not and did not directly or indirectly infringe any claim of the '651 patent, literally or under the doctrine of equivalents.

92.    An actual, substantial, immediate, and continuing controversy exists between Brightpick and Ocado regarding whether Brightpick infringes or has infringed the '651 patent. A judicial declaration is necessary and appropriate to determine the parties' rights regarding the '651 patent.

## COUNT II

*(Declaration of Non-Infringement of the '597 Patent)*

93.    Brightpick restates and incorporates by reference the allegations in paragraphs 1 through 88 of this Complaint as if fully set forth herein.

94.    Ocado claims to own all right, title, and interest in the '597 patent.

95.    Brightpick and its products, including Brightpick's Gridpicker, do not and did not directly or indirectly infringe any claim of the '597 patent, literally or under the doctrine of equivalents.

96.    An actual, substantial, immediate, and continuing controversy exists between Brightpick and Ocado regarding whether Brightpick infringes or has infringed the '597 patent. A judicial declaration is necessary and appropriate to determine the parties' rights regarding the '597 patent.

## COUNT III

*(Declaration of Non-Infringement of the '302 Patent)*

97.    Brightpick restates and incorporates by reference the allegations in paragraphs 1 through 88 of this Complaint as if fully set forth herein.

98.     Ocado claims to own all right, title, and interest in the '302 patent.

99.     Brightpick and its products, including Brightpick's Gridpicker, do not and did not directly or indirectly infringe any claim of the '302 patent, literally or under the doctrine of equivalents.

100.     An actual, substantial, immediate, and continuing controversy exists between Brightpick and Ocado regarding whether Brightpick infringes or has infringed the '302 patent. A judicial declaration is necessary and appropriate to determine the parties' rights regarding the '302 patent.

## COUNT IV

*(Declaration of Non-Infringement of the '980 Patent)*

101.     Brightpick restates and incorporates by reference the allegations in paragraphs 1 through 88 of this Complaint as if fully set forth herein.

102.     Ocado claims to own all right, title, and interest in the '980 patent.

103.     Brightpick and its products, including Brightpick's Gridpicker, do not and did not directly or indirectly infringe any claim of the '980 patent, literally or under the doctrine of equivalents.

104.     An actual, substantial, immediate, and continuing controversy exists between Brightpick and Ocado regarding whether Brightpick infringes or has infringed the '980 patent. A judicial declaration is necessary and appropriate to determine the parties' rights regarding the '980 patent.

## COUNT V

*(Declaration of Non-Infringement of the '574 Patent)*

105. Brightpick restates and incorporates by reference the allegations in paragraphs 1 through 88 of this Complaint as if fully set forth herein.

106. Ocado claims to own all right, title, and interest in the '574 patent.

107. Brightpick and its products, including Brightpick's Gridpicker, do not and did not directly or indirectly infringe any claim of the '574 patent, literally or under the doctrine of equivalents.

108. An actual, substantial, immediate, and continuing controversy exists between Brightpick and Ocado regarding whether Brightpick infringes or has infringed the '574 patent. A judicial declaration is necessary and appropriate to determine the parties' rights regarding the '574 patent.

## COUNT VI

*(Declaration of Non-Infringement of the '405 Patent)*

109. Brightpick restates and incorporates by reference the allegations in paragraphs 1 through 88 of this Complaint as if fully set forth herein.

110. Ocado claims to own all right, title, and interest in the '405 patent.

111. Brightpick and its products, including Brightpick's Gridpicker, do not and did not directly or indirectly infringe any claim of the '405 patent, literally or under the doctrine of equivalents.

112. An actual, substantial, immediate, and continuing controversy exists between Brightpick and Ocado regarding whether Brightpick infringes or has infringed the '405 patent.

A judicial declaration is necessary and appropriate to determine the parties' rights regarding the '405 patent.

## COUNT VII

### *(Declaration of Non-Infringement of the '832 Patent)*

113.    Brightpick restates and incorporates by reference the allegations in paragraphs 1 through 88 of this Complaint as if fully set forth herein.

114.    Ocado claims to own all right, title, and interest in the '832 patent.

115.    Brightpick and its products, including Brightpick's Gridpicker, do not and did not directly or indirectly infringe any claim of the '832 patent, literally or under the doctrine of equivalents.

116.    An actual, substantial, immediate, and continuing controversy exists between Brightpick and Ocado regarding whether Brightpick infringes or has infringed the '832 patent. A judicial declaration is necessary and appropriate to determine the parties' rights regarding the '832 patent.

## PRAYER FOR RELIEF

WHEREFORE, Brightpick prays for judgment and relief as follows:

A.    A declaration that Brightpick does not and did not infringe, directly or indirectly, literally or under the doctrine of equivalents, any claim of the '651 patent;

B.    A declaration that Brightpick does not and did not infringe, directly or indirectly, literally or under the doctrine of equivalents, any claim of the '597 patent;

C.    A declaration that Brightpick does not and did not infringe, directly or indirectly, literally or under the doctrine of equivalents, any claim of the '302 patent;

D.      A declaration that Brightpick does not and did not infringe, directly or indirectly, literally or under the doctrine of equivalents, any claim of the '980 patent;

E.      A declaration that Brightpick does not and did not infringe, directly or indirectly, literally or under the doctrine of equivalents, any claim of the '574 patent;

F.      A declaration that Brightpick does not and did not infringe, directly or indirectly, literally or under the doctrine of equivalents, any claim of the '405 patent;

G.      A declaration that Brightpick does not and did not infringe, directly or indirectly, literally or under the doctrine of equivalents, any claim of the '832 patent;

H.      Judgment in favor of Brightpick and against Ocado on Brightpick's claims;

I.      Finding that this is an exceptional case under 35 U.S.C. § 285;

J.      Awarding Brightpick its costs and attorneys' fees in connection with this action; and

K.      Such further and additional relief as the Court deems just and proper.

## JURY DEMAND

Brightpick demands a jury trial on all issues and claims so triable.

Date:  April 12, 2026                                    Respectfully submitted,

Rebecca S. LeGrand
Virginia Bar No. 89859
LEGRAND LAW PLLC
1100 H Street NW, Suite 1220
Washington, DC 20005
Ph: (202) 587-5725
Fax: (202) 587-5610
rebecca@legrandpllc.com

Erika H. Warren (*pro hac vice* forthcoming)
Matthew S. Warren (*pro hac vice* forthcoming)

– 22 –

Jacob A. Kamstra (*pro hac vice* forthcoming)
Madeline A. Woodall (*pro hac vice* forthcoming)
WARREN LLP
2261 Market Street, No. 606
San Francisco, California, 94114
+1 (415) 895-2940
+1 (415) 895-2964 facsimile
2026-04-12@cases.warrenllp.com

*Attorneys for Plaintiff Brightpick Inc.*