**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**RICHMOND DIVISION**

| | |
|---|---|
| BRIGHTPICK INC., <br><br>                     Plaintiff, <br><br>     v. <br><br> OCADO INNOVATION LTD. AND <br> OCADO SOLUTIONS LTD., <br><br>               Defendants. | Case No. 3:26-cv-305 (DJN) <br><br> **JURY TRIAL DEMANDED** |

**MEMORANDUM IN SUPPORT OF MOTION FOR**
**<u>DEFAULT JUDGMENT OF PLAINTIFF BRIGHTPICK INC.</u>**

**TABLE OF CONTENTS**

*Page*

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

A.    Brightpick's Groundbreaking Warehouse Automation Systems. . . . . . . . . . . . . . . . . . . 2

B.    Ocado's System of Stacked Containers, Addressable Only From the Top . . . . . . . . . . . 3

C.    Brightpick Announces Gridpicker . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

D.    Ocado's Campaign Against Brightpick in Germany . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

E.    Ocado's Campaign Against Brightpick in the United States . . . . . . . . . . . . . . . . . . . . . 5

F.    After Brightpick Files This Action, Ocado Goes Silent in the United States,
      But Continues to Litigate Assiduously in Germany . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

I.    This Court Has Jurisdiction Over This Action . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

      A.    This Court Has Subject Matter Jurisdiction . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

      B.    This Court Has Personal Jurisdiction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

      C.    Venue is Proper in This Court . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11

      D.    Brightpick Properly Served Ocado Innovation and Ocado Solutions . . . . . . . . . 12

II.   Brightpick Did Not and Does Not Infringe the Patents-in-Suit . . . . . . . . . . . . . . . . . . 14

      A.    Brightpick Did Not and Does Not Infringe the '651 Patent . . . . . . . . . . . . . . . . 14

      B.    Brightpick Did Not and Does Not Infringe the '597 Patent . . . . . . . . . . . . . . . . 15

      C.    Brightpick Did Not and Does Not Infringe the '302 Patent . . . . . . . . . . . . . . . . 16

      D.    Brightpick Did Not and Does Not Infringe the '980 Patent . . . . . . . . . . . . . . . . 17

      E.    Brightpick Did Not and Does Not Infringe the '574 Patent . . . . . . . . . . . . . . . . 18

      F.    Brightpick Did Not and Does Not Infringe the '405 Patent . . . . . . . . . . . . . . . . 19

      G.    Brightpick Did Not and Does Not Infringe the '832 Patent . . . . . . . . . . . . . . . . 20

III.  The Court Should Enter Declaratory Relief . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .22

## TABLE OF AUTHORITIES

*Cases*                                                                    *Page*

*Anderson v. Found. for Advancement, Educ. & Emp. of Indians*,
   No. 99-1508, 1999 WL 598860 (4th Cir. Aug. 10, 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Arrowhead Indus. Water, Inc. v. Ecolochem, Inc.*,
   846 F.2d 731 (Fed. Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*BNSF Ry. Co. v. Tyrrell*,
   581 U.S. 402 (2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Bruce & Tanya & Assocs., Inc. v. Bd. of Supervisors of Fairfax Cty., Va.*,
   355 F. Supp. 3d 386 (E.D. Va. 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Bristol-Myers Squibb Co. v. Mylan Pharms. Inc.*,
   No. 17-739, 2017 WL 3980155 (D. Del. Sept. 11, 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Cat Tech LLC v. TubeMaster, Inc.*,
   528 F.3d 871 (Fed. Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9-10

*Comcast Cable Commc'ns, LLC v. OpenTV, Inc.*,
   319 F.R.D. 269 (N.D. Cal. 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Comfort Wheels Inc. v. Shenzhen Miruisi Tech. Co.*,
   No. 21-556, 2021 WL 4219265 (E.D. Va. Aug. 20, 2021),
   *R. & R. adopted*, 2021 WL 4199364 (E.D. Va. Sept. 13, 2021) . . . . . . . . . . . . . . . . . . . 8-9, 21

*Empire Fire & Marine Ins. Co. v. Pandt-Brown*,
   322 F. Supp. 3d 694 (E.D. Va. 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*EVODC, LLC v. Reliant Mgmt. Consultant, L.L.C.*,
   No. 23-678, 2024 WL 2494607 (E.D. Va. Feb. 26, 2024),
   *R. & R. adopted*, 2024 WL 2494642 (E.D. Va. Mar. 13, 2024) . . . . . . . . . . . . . . . . . . . . . . . 8

*Globalsantafe Corp. v. Globalsantafe.com*,
   250 F. Supp. 2d 610 (E.D. Va. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 10, 11, 14-21

*Goldbelt Wolf, LLC v. Operational Wear Armor, LLC*,
   No. 15-1269, 2016 WL 1756487 (E.D. Va. May 3, 2016) . . . . . . . . . . . . . . . . . . . . . . . 7-8, 12

*Molloy v. Triwin Inc.*,
   No. 23-4317, 2024 WL 4800681 (C.D. Cal. Apr. 3, 2024) . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Symbology Innovations, LLC v. Lego Sys., Inc.*,
   282 F. Supp. 3d (E.D. Va. 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

# TABLE OF AUTHORITIES

*(continued)*

*Cases*                                                                 *Page*

*Urrego v. Samuel I. White, P.C.,*
  No. 17-437, 2018 WL 4524106 (E.D. Va. July 3, 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Urrego v. Samuel I. White, P.C.,*
  No. 17-437, 2018 WL 3586316 (E.D. Va. July 26, 2018) . . . . . . . . . . . . . . . . . . . . . . . . . 12

*U.S. Aluminum Corp. v. Kawneer Co.,*
  694 F.2d 193 (9th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Victoria Select Ins. Co. v. R & G Transp.,*
  No. 16-624, 2017 WL 5158684 (E.D. Va. Sept. 7, 2017) . . . . . . . . . . . . . . . . . . . . . . . . . 8

*White v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.,*
  913 F.2d 165 (4th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Statutes*

28 U.S.C. § 1331 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

28 U.S.C. § 1338 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

28 U.S.C. § 1391 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11-12

28 U.S.C. § 1400 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11-12

28 U.S.C. § 2201 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

35 U.S.C. § 284 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

35 U.S.C. § 285 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Fed. R. Civ. P. 4 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Fed. R. Civ. P. 8 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Fed. R. Civ. P. 55 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

## TABLE OF AUTHORITIES

*(continued)*

*Other Authorities*                                                                            *Page*

*AutoStore Tech. AS v. Ocado Grp. plc*,
　　No. 20-94, Docket No. 1 (E.D. Va. Oct. 1, 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Hague Convention of 15 November 1965 on the Service Abroad of Judicial and Extrajudicial*
　　*Documents in Civil or Commercial Matters* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Ocado Grp. plc v. AutoStore AS*,
　　No. 21-68, Docket No. 1 (E.D. Va. Feb. 2, 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

## INTRODUCTION

This action resulted from Ocado's sudden and aggressive pursuit of Brightpick in an attempt to assert a patent monopoly Ocado does not have.  On April 9, 2026, days before an important trade show in Atlanta, Ocado's U.S. litigation counsel sent a letter to Brightpick alleging that Brightpick's Gridpicker system infringed seven U.S. patents.  The April 9 letter demanded a response within three days, two of which fell on a weekend, and threatened legal action if Brightpick did not respond.

Brightpick had seen this film before:  several weeks earlier, Ocado's German litigation counsel sent a letter to Brightpick just after midnight on the first day of an important trade show in Stuttgart, alleging that Brightpick's Gridpicker system infringed Ocado's German patents.  That time, Ocado demanded a response in less than twelve hours.  That same day, Ocado raced to the courthouse in Düsseldorf and secured an *ex parte* preliminary injunction, preventing Brightpick from presenting its exhibition, which it had worked tirelessly to prepare.

This time, Brightpick acted quickly to defend itself.  On April 12, Brightpick filed this action, seeking a declaratory judgment that it does not infringe the seven U.S. patents asserted in Ocado's April 9 letter.  On the same day it filed suit, Brightpick responded to Ocado's U.S. litigation counsel, attaching a courtesy copy of the complaint and asking if counsel would accept service.  Ocado did not respond, so Brightpick served both Ocado defendants in the UK under the Hague convention, completing service on April 22.  The time for Ocado to respond to the complaint came and went, and still Ocado has not responded.  Ocado has thus defaulted, and Brightpick's allegations in its complaint are now deemed admitted.

The Ocado defendants are sophisticated litigants represented by sophisticated counsel, with ample resources and experience litigating in U.S. courts including this one.  Given Ocado's

– 1 –

continued and aggressive pursuit of Brightpick in Germany, Brightpick is left to speculate that Ocado chose to ignore this action for some strategic purpose. But ultimately it does not matter: because Brightpick's complaint establishes that this Court has subject matter and personal jurisdiction, and that Brightpick did not and does not infringe any of the seven patents-in-suit, the Court should enter a default judgment in favor of Brightpick and against Ocado.

## BACKGROUND

### A.    Brightpick's Groundbreaking Warehouse Automation Systems

Plaintiff Brightpick Inc. is a Delaware corporation with a principal place of business in Austin, Texas. Brightpick Inc. is a wholly owned subsidiary of Brightpick s.r.o., a Slovakian company headquartered in Slovakia. Docket No. 1 ("Compl.") ¶¶ 2-3. Brightpick Inc. and Brightpick s.r.o. (collectively, "Brightpick") provide AI-powered end-to-end warehouse fulfillment automation. *Id.* ¶ 4. Brightpick's solutions are suitable for a wide range of retailers, distributors, and manufacturers, in part because customers can use Brightpick's systems with traditional rack-and-aisle warehouse infrastructure, and thus do not need to spend the significant capital cost necessary to rebuild their warehouses. *Id.* Brightpick's automated fulfillment solutions are widely recognized as innovative, receiving numerous industry awards. *Id.*

Brightpick's inaugural system, called Autopicker, uses robots which work like humans: Autopicker robots can move through warehouses built for human workers, traveling back and forth in warehouse aisles and collecting goods from warehouse shelves to fulfill orders. *Id.* ¶ 14. Using advanced 3D vision and artificial intelligence, Autopickers can move more efficiently than human workers, and can work around the clock, even in complete darkness. *Id.* The Autopicker system uses standard shelving in a traditional warehouse rack-and-aisle layout, so Brightpick's customers need not incur the significant upfront cost of reconfiguring their shelving. *Id.* ¶ 15.

– 2 –

**B.      Ocado's System of Stacked Containers, Addressable Only From the Top**

Defendant Ocado Innovation Ltd. and defendant Ocado Solutions Ltd. (collectively, "Ocado") are UK companies headquartered at Buildings One & Two, Trident Place, Mosquito Way, Hatfield, Hertfordshire, AL10 9UL, United Kingdom, and are wholly owned subsidiaries of Ocado Group PLC, a UK company. Compl. ¶¶ 5-7. Ocado conducts business activities in the United States from its base of operations at 1600 Tysons Boulevard, Suite 400, Tysons Corner, Virginia, 22102, which is the headquarters of Ocado Solutions USA Inc., a Delaware corporation and another wholly owned subsidiary of Ocado Group PLC. *Id.* ¶ 8. Ocado Solutions USA Inc. sells and supports Ocado products and systems in the United States, and is responsible for United States marketing and sale of those products and systems. *Id.*

Ocado also provides automated warehouse storage and retrieval systems. *Id.* ¶ 17. Unlike Brightpick's technology, however, Ocado's system requires its customers to reconfigure their warehouses, removing all the aisles to allow for Ocado's grid of stacked containers. *Id.* Ocado's robots stay above the contents of the warehouse and manipulate stacks of containers, each container resting on top of the one below it. *Id.* ¶ 18. If an Ocado robot wants to pick an item from a container below the top container in a stack, it must dig down for that container by lifting the top container up into the robot, moving to another stack, putting that container down and making it the top container in the other stack, and repeating this process until the item it wants is in the top container of a stack, similar to a child playing Towers of Hanoi. *Id.*

**C.      Brightpick Announces Gridpicker**

On March 17, 2026, Brightpick announced a new groundbreaking robotic fulfillment system, called Gridpicker. Compl. ¶ 19. Like the Autopicker system, Gridpicker uses standard shelving in a traditional warehouse rack-and-aisle layout, with items stored on standard shelves,

rather than stacked on top of each other as in Ocado's system. *Id.* ¶ 20. Resting on each shelf are trays, called "totes," that hold items available for picking. *Id.* Gridpicker robots can pick items from totes at the top shelf of each rack. *Id.* If a Gridpicker robot wants to pick an item from a tote that is not at the top shelf of the rack, a separate robot, moving through the aisles that remain in the traditional warehouse rack-and-aisle layout, laterally pulls the desired tote from the shelf where it rests, and moves it up to the top level. *Id.* Unlike in Ocado's system, Gridpicker never has to dig down through a stack of containers addressable only from the top; because Gridpicker's totes rest on shelves rather than each other, any of them can move to the top shelf in a single action. *Id.* The Gridpicker system thus optimizes efficiency using artificial intelligence by orchestrating a careful robot waltz. *Id.*

**D.      Ocado's Campaign Against Brightpick in Germany**

As Brightpick was innovating, Ocado was stagnating, and its market position fell accordingly. Compl. ¶ 21. Unable to succeed in the marketplace, Ocado turned to patent assertion. *Id.* ¶ 22. Ocado first asserted its patent portfolio against Brightpick in Germany. *Id.* ¶ 23. Starting on March 24, 2026, Brightpick planned to exhibit its Gridpicker system at LogiMAT, a German trade show for logistics solutions and process management. *Id.* ¶ 24. But on March 23, at 12:49 a.m. local time, Ocado's German counsel sent an email to info@brightpick.ai attaching a "warning letter regarding patent infringement that requires immediate attention." *Id.* ¶ 25; *see also id.* Docket 1-2. Ocado's letter stated that "we believe that the Gridpicker-System infringes on our client's patent **EP 3 374 291 B1 (EP 291). We hereby assert infringement of the German part of the EP 291 and request that Brightpick immediately refrains from further infringements and sign a cease-and desist declaration before <u>1pm CET on Monday, 23 March 2026</u>**." Compl. ¶ 26 (quoting Docket 1-2 ¶ 4)

(emphasis in letter from Ocado).  Ocado thus gave Brightpicker 12 hours and 11 minutes to respond.  *See id.*

Later on March 23, at 3:52 p.m. local time, Ocado filed in the Regional Court of Düsseldorf an *ex parte* application for an interim injunction against Brightpick.  Docket No. 1-3; *see* Compl. ¶ 27.  On March 24, before Brightpick could respond, the Regional Court of Düsseldorf granted Ocado's *ex parte* application.  Compl. ¶ 28.  Brightpick immediately complied with the injunction by covering up its demonstration at the trade show.  *Id.* ¶ 30. Ocado sent police to the trade fair; the officers concluded that Brightpick's covered-up display complied with the order, and left.  *Id.* ¶ 31.

**E.      Ocado's Campaign Against Brightpick in the United States**

Just a few weeks after the LogiMAT trade show in Germany, starting on April 13, 2026, Brightpick planned to exhibit its Gridpicker system at MODEX, a Georgia trade show for supply chain management.  Compl. ¶ 32.  Although Ocado knew of Brightpick's plans to exhibit at MODEX since at least March 23, it said nothing to Brightpick until Thursday, April 9, when Ocado's U.S. litigation counsel sent a letter to Brightpick, claiming infringement of the Patents-in-Suit.  Docket No. 1-4; *see* Compl. ¶¶ 33-34.  Ocado's letter stated:

> As you are aware, Ocado recently obtained a preliminary injunction in Germany from the Landgericht Düsseldorf (Case No.4b O 28/26) to prevent Brightpick's infringement of Ocado's intellectual property rights in connection with the display, demonstration, and/or offering for sale of Brightpick's Gridpicker automated warehouse system at the LogiMAT 2026 Trade Fair in Messe Stuttgart in late March 2026.  That order, based on the Gridpicker system's infringement of European Patent EP 3 374 291 B1 ("EP291"), was entered on 24 March 2026 and remains in effect.
>
> Notwithstanding those proceedings, it has come to our client's attention that your company intends to present, display, demonstrate, and/or offer for sale the Gridpicker system—or a substantially similar product—at MODEX 2026, scheduled to take place from April 13-16, 2026, in Atlanta, Georgia.  Ocado takes

the protection of its intellectual property extremely seriously and must act to safeguard its rights in every jurisdiction in which those rights are infringed.

Docket No. 1-4; *see* Compl. ¶ 34.  Ocado's letter then claimed infringement of U.S. Patent Nos. 10,035,651 (the "'651 patent"), 10,759,597 (the "'597 patent"), 10,829,302 (the "'302 patent"), 11,273,980 (the "'908 patent"), 11,485,574 (the "'574 patent"), 11,505,405 (the "'405 patent"), and 12,172,832 (the "'832 patent") (collectively, the "Patents-in-Suit").  *See* Docket No. 1-4.

Ocado's letter closed by stating that:

> It is essential that Brightpick address this issue immediately and provide a satisfactory response to this notice in advance of the MODEX trade show.  As shown by Ocado's application in Germany, Ocado cannot allow unlicensed infringement of its portfolio to continue and is prepared to pursue all available lawful remedies.  Please be advised that any infringing conduct following receipt of this notice may be deemed willful, exposing your company to enhanced damages of up to three times the amount of actual damages under 35 U.S.C. § 284, as well as an award of attorneys' fees under 35 U.S.C. § 285.

Docket No. 1-4; *see* Compl. ¶ 34.  Finally, Ocado's letter stated that "we require a response prior to the commencement of the MODEX trade show next week."  Docket No. 1-4; *see* Compl. ¶ 34.  Ocado thus gave Brightpick only Friday, Saturday and Sunday, April 10-12, to respond.

**F.      After Brightpick Files This Action, Ocado Goes Silent in the United States, But Continues to Litigate Assiduously in Germany**

Despite Ocado's letter, Brightpick knew that it did not infringe any of the Patents-in-Suit. On April 12, 2026, Brightpick filed this action seeking a declaratory judgment of non-infringement of the Patents-in-Suit, meeting Ocado's deadline of providing "a response prior to the commencement of the MODEX trade show."  Docket No. 1-4; *see* Docket No. 1 through Docket No. 8.  Brightpick immediately transmitted a copy of its complaint and exhibits to Ocado's U.S. litigation counsel.  *See* Docket No. 17-1 ¶ 3.  Given the urgent tone of Ocado's April 9 letter, Brightpick expected a prompt response from Ocado.  But none came.  *See id.* ¶ 6. Brightpick expeditiously served Ocado through the Hague convention; its process server

– 6 –

completed service under UK law on April 22, 2026.  Docket Nos. 15, 16; *see* Docket No. 17-1 ¶ 4.  Still, Brightpick heard nothing from Ocado in the United States.  *See* Docket No. 17-1 ¶ 6.  Brightpick received the certificates of service on Ocado and promptly filed them with this Court.  Docket Nos. 15, 16; *see* Docket No. 17-1 ¶ 5.  Still, Brightpick heard nothing from Ocado in the United States.  *See* Docket No. 17-1 ¶ 6.  On May 13, Ocado's time to respond to Brightpick's complaint expired; to Brightpick's surprise, Ocado failed to provide a response.  *See id.* ¶¶ 4-7.  On May 14, Brightpick applied for entry of default from the Clerk.  Docket No. 17.  On May 15, the Clerk entered default against Ocado.  Docket No. 18.  As of this filing, Brightpick still has heard nothing regarding this action either from Ocado or from its U.S. litigation counsel.

In Germany, however, Ocado and its German counsel have litigated assiduously.  Ocado has defended its *ex parte* preliminary injunction, and will appear at a hearing regarding this injunction on Tuesday, May 19.  Ocado has also claimed that Brightpick violated the *ex parte* preliminary injunction, and has sought penalties for each alleged violation.  Finally, Ocado has also claimed that Brightpick's CEO should be personally and criminally liable for Brightpick's alleged violations of its *ex parte* preliminary injunction in a two-hour period on March 23.

## ARGUMENT

"Rule 55 of the Federal Rules of Civil Procedure provides for the entry of a default judgment when 'a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend.'"  *Goldbelt Wolf, LLC v. Operational Wear Armor, LLC*, No. 15-1269, 2016 WL 1756487, at *1 (E.D. Va. May 3, 2016) (quoting Fed. R. Civ. P. 55(a)); Fed. R. Civ. P. 55(b).  As the Clerk's Entry of Default recognized, Ocado has "failed to appear, plead or otherwise defend this action within the prescribed time allowed as otherwise provided in the Federal Rules of Civil Procedure."  Docket No. 18.  "Prior to entering default judgment, 'the

[c]ourt must ensure that: (1) it possesses personal jurisdiction over the defaulting party; (2) it possesses subject-matter jurisdiction over each of the claims; (3) the action is in the proper venue; and, (4) the defaulting party received proper service of process.'" *Empire Fire & Marine Ins. Co. v. Pandt-Brown*, 322 F. Supp. 3d 694, 696 (E.D. Va. 2018) (alterations in original) (quoting *Victoria Select Ins. Co. v. R & G Transp.*, No. 16-624, 2017 WL 5158684, at *3 (E.D. Va. Sept. 7, 2017)).  "Upon default, facts alleged in the complaint are deemed admitted and the appropriate inquiry is whether the facts as alleged state a claim." *Globalsantafe Corp. v. Globalsantafe.com*, 250 F. Supp. 2d 610, 612 n.3 (E.D. Va. 2003) (citing *Anderson v. Found. for Advancement, Educ. & Emp. of Indians*, No. 99-1508, 1999 WL 598860 (4th Cir. Aug. 10, 1999)); *see* Fed. R. Civ. P. 8(b)(6).  The allegations in Brightpick's complaint, now deemed admitted by Ocado, confirm that the Court should enter judgment against Ocado.

## I.      This Court Has Jurisdiction Over This Action

"The Court must have both subject matter jurisdiction and personal jurisdiction," and "venue in this judicial district must be proper before the Court can render a default judgment." *EVODC, LLC v. Reliant Mgmt. Consultant, L.L.C.*, No. 23-678, 2024 WL 2494607, at *3 (E.D. Va. Feb. 26, 2024), *R. & R. adopted*, 2024 WL 2494642 (E.D. Va. Mar. 13, 2024); *see also Comfort Wheels Inc. v. Shenzhen Miruisi Tech. Co.*, No. 21-556, 2021 WL 4219265, at *2 (E.D. Va. Aug. 20, 2021), *R. & R. adopted*, 2021 WL 4199364 (E.D. Va. Sept. 13, 2021).  Because all facts alleged in the complaint are "deemed admitted" by Ocado, Brightpick must only establish that its alleged facts satisfy the jurisdictional requirements.  *Globalsantafe*, 250 F. Supp. 2d at 612 n.3; *see also Comfort Wheels*, 2021 WL 4219265, at *2; *Goldbelt*, 2016 WL 1756487, at *1.

### A.       This Court Has Subject Matter Jurisdiction

This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331, 1338(a), and 2201(a). *See* Compl. ¶ 10.  This action arises under the Declaratory Judgment Act, 28 U.S.C. § 2201, and under the patent laws of the United States.  *See id.* ¶ 9.  This Court "may declare the rights and other legal relations of the interested parties in a case of actual controversy within its jurisdiction."  *Comfort Wheels*, 2021 WL 4219265, at \*2.  "To satisfy the case-or-controversy requirement, the declaratory action must stem from a 'definite and concrete [dispute], touching the legal relations of parties having adverse legal interests,' that is 'real and substantial' and 'of a conclusive character.'"  *Id.* at \*4 (alteration in original) (quoting *Bruce & Tanya & Assocs., Inc. v. Bd. of Supervisors of Fairfax Cty., Va.*, 355 F. Supp. 3d 386, 402-03 (E.D. Va. 2018)).  Where a "defendant has expressly charged a current activity of the plaintiff as an infringement, there is clearly an actual controversy, certainty has rendered apprehension irrelevant, and one need say no more."  *Cat Tech LLC v. TubeMaster, Inc.*, 528 F.3d 871, 880 n.2 (Fed. Cir. 2008) (quoting *Arrowhead Indus. Water, Inc. v. Ecolochem, Inc.*, 846 F.2d 731, 736 (Fed. Cir. 1988)).

That is so here.  As set forth in the complaint, Ocado's letter from its U.S. litigation counsel stated that "Brightpick's Gridpicker appears to practice or embody one or more claims of . . . at least the following such patents in Ocado's portfolio," and listed the Patents-in-Suit. Docket No. 1-4; *see supra* § E.  Ocado's letter further stated that "Ocado cannot allow unlicensed infringement of its portfolio to continue," thus confirming that Ocado claimed current and ongoing infringement.  Docket No. 1-4; *see supra* § E.  Finally, Ocado's letter stated that "any infringing conduct following receipt of this notice may be deemed willful, exposing your company to enhanced damages of up to three times the amount of actual damages under 35 U.S.C. § 284, as well as an award of attorneys' fees under 35 U.S.C. § 285."  Docket No. 1-4;

*see supra* § E.  Each of these allegations would, by itself, show an "actual controversy" between Ocado and Brightpick.  *Cat Tech*, 528 F.3d at 880 n.2.  Together, these allegations and the rest of Ocado's letter leave no room for doubt.  No reasonable attorney could read this letter as anything other than an immediate threat of litigation:  its tone, its references to the litigation in Germany, and its author's status as counsel to Ocado in previous U.S. patent litigation, all confirm the immediacy and seriousness of Ocado's litigation threat.  *See* Docket No. 1-4; *supra* § E; https://www.sullcrom.com/About/News-and-Events/Highlights/2023/July/In-Global-IP-Disputes-Called-the-Robot-Wars-S-C-Secures-Settlement-for-Client-Ocado-Group-plc.  Ocado's letter thus confirmed that "an actual, substantial, immediate, and continuing controversy exists between Brightpick and Ocado that requires a declaration of rights by this Court regarding the Patents-in-Suit."  Compl. ¶ 10.

### B.      This Court Has Personal Jurisdiction

This Court has both general and specific jurisdiction over Ocado.  "A corporation is subject to general personal jurisdiction where it has 'affiliations with the State [that] are so continuous and systematic as to render [the corporation] essentially at home in the forum State.'" *Symbology Innovations, LLC v. Lego Sys., Inc.*, 282 F. Supp. 3d 916, 936 (E.D. Va. 2017) (alteration in original) (quoting *BNSF Ry. Co. v. Tyrrell*, 581 U.S. 402, 403 (2017)).  Although the Ocado defendants are UK companies, this Court has general jurisdiction over them because, "Ocado conducts its business activities in the United States from its base of operations at 1600 Tysons Boulevard, Suite 400, Tysons Corner, Virginia, 22102," and is therefore "essentially at home" here.  Compl. ¶¶ 5-6, 8; *Symbology*, 282 F. Supp. 3d at 936.  In addition to these allegations in the complaint, now "deemed admitted" by Ocado, *Globalsantafe*, 250 F. Supp. 2d at 612 n.3, Ocado confirmed in previous litigation that "Ocado is an independent online grocer

and innovator, with global headquarters in the United Kingdom and U.S. headquarters in Virginia." *Ocado Grp. plc v. AutoStore AS*, No. 21-68, Docket No. 1 ¶ 21 (E.D. Va. Feb. 2, 2021). And Ocado has both filed cases in this District and responded to cases filed against it in this District, without challenging personal jurisdiction. *See AutoStore Tech. AS v. Ocado Grp. plc*, No. 20-494, Docket No. 1 (E.D. Va. Oct. 1, 2021) (defendants including Ocado Innovation Ltd. and Ocado Solutions Ltd.); *Ocado Grp.*, Docket No. 1 (plaintiffs including Ocado Solutions Ltd.).

This Court also has specific jurisdiction over Ocado, because Ocado "conducts its business activities in the United States from its base of operations" in this District, including supervision of U.S. litigation counsel who prepared and sent the April 9 letter. Compl. ¶ 8; Docket No. 1-4. In addition, from within this District, Ocado's U.S. agent "sells and supports Ocado products in the United States, and is responsible for United States marketing and sale of those products and systems." Compl. ¶ 8. And the Ocado defendants "have executed a non-exclusive license to the Patents-in-Suit with Ocado Solutions USA Inc.," headquartered in this District. *Id.* These "deemed admitted" allegations of direct connections, both to the Patents-in-Suit and to Ocado's products that allegedly practice those patents, are sufficient to provide specific personal jurisdiction in this District. *Globalsantafe*, 250 F. Supp. 2d at 612 n.3.

### C.    Venue is Proper in This Court

"Venue in a declaratory judgment action for patent noninfringement and invalidity is governed by the general venue statute, 28 U.S.C. § 1391(b) and (c), and not the special patent infringement venue statute, 28 U.S.C. § 1400(b)." *Bristol-Myers Squibb Co. v. Mylan Pharms. Inc.*, No. 17-379, 2017 WL 3980155, at *6 n.8 (D. Del. Sept. 11, 2017) (quoting *U.S. Aluminum Corp. v. Kawneer Co.*, 694 F.2d 193, 195 (9th Cir. 1982)). Thus venue is proper in "a judicial

district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated," 28 U.S.C. § 1391(b)(2), or, "if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action."  28 U.S.C. § 1391(b)(3).

In this action, venue is proper under § 1391(b)(2) or, in the alternative, § 1391(b)(3). Under § 1391(b)(2), this District "is where a substantial part of the events or omissions giving rise to the claim occurred."  Compl. ¶ 12.  This District is where Ocado "conducts its business activities in the United States," including supervision of U.S. litigation counsel, where Ocado's U.S. agent "sells and supports Ocado products in the United States, and is responsible for United States marketing and sale of those products and systems," where Ocado has "executed a non-exclusive license to the Patents-in-Suit," and where Ocado has already sued and been sued. *Id.* ¶ 8; *see supra* § I.B.  Alternatively, venue is proper under 28 U.S.C. § 1391(c), "because there is no district in which an action may otherwise be brought, and this Court has personal jurisdiction over Ocado."  Compl. ¶ 12; *see supra* § I.B.

### D.  Brightpick Properly Served Ocado Innovation and Ocado Solutions

"As a jurisdictional matter, a court cannot enter default judgment against a defendant until that defendant has been brought within the court's jurisdiction by adequate service of process." *Urrego v. Samuel I. White, P.C.*, No. 17-437, 2018 WL 4524106, at *9 (E.D. Va. July 3, 2018), *R. &. R. adopted*, 2018 WL 3586316 (E.D. Va. July 26, 2018) (quoting *Goldbelt*, 2016 WL 1756487, at *1).  Brightpick properly served both defendants, allowing entry of judgment against them.

– 12 –

"Federal Rule of Civil Procedure 4(h)(2), which governs service of process upon a foreign corporation, provides that a corporation can be served outside the United States in 'any manner prescribed by Rule 4(f) for serving an individual, except personal delivery under (f)(2)(C)(i).'" *Molloy v. Triwin Inc.*, No. 23-4317, 2024 WL 4800681, at *1 (C.D. Cal. Apr. 3, 2024) (quoting Fed. R. Civ. P. 4(h)(2)). Both defendants are headquartered and have their registered offices at the same address, Buildings One & Two Trident Place, Mosquito Way, Hatfield, Hertfordshire, AL10 9UL, United Kingdom. Compl. ¶¶ 5-6; *see* https://find-and-update.company-information.service.gov.uk/company/08813912; https://find-and-update.company-information.service.gov.uk/company/04204963. The UK is a signatory to the Hague Convention of 15 November 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters (the "Hague Convention"). *See* https://www.hcch.net/en/states/authorities/details3/?aid=278. Article 10(b) of the Hague Convention permits "judicial officers, officials or other competent persons of the State of origin to effect service of judicial documents directly through the judicial officers, officials or other competent persons of the State of destination" so long as the country does not object, which the UK does not. *Molloy*, 2024 WL 4800681, at *1; *see* https://www.hcch.net/en/states/authorities/-details3/?aid=278. Brightpick's process server effected service on both defendants "at the direction of the Senior Master of the King's Bench Division of the Senior Courts of England and Wales by the agent for the purposes of Graham Henry Bridgman, a Solicitor of the Senior Courts of England and Wales, by a method prescribed by the internal laws of England and Wales for the service of documents upon persons who are within its territory." Docket No. 15 at 3-4; Docket No. 16 at 3-4. Brightpick's service was proper under the laws of England, and therefore "was proper under Federal Rule of Civil Procedure 4(f)(1)." *Molloy*, 2024 WL 4800681, at *2.

– 13 –

II.     **Brightpick Did Not and Does Not Infringe the Patents-in-Suit**

A complaint seeking a declaratory judgment of non-infringement "must contain factual allegations sufficient to show how or why a claim limitation is not met." *Comcast Cable Commc'ns, LLC v. OpenTV, Inc.*, 319 F.R.D. 269, 273 (N.D. Cal. 2017). It "must go beyond only stating in conclusory terms that each accused product or service meets the elements of non-infringement and must also set forth factual allegations showing how each accused product or service specifically does not meet at least one claim limitation, such that it does not infringe the asserted patent." *Id.* Brightpick's complaint easily met this standard. *See* Compl. ¶¶ 36-88. Now that Ocado has defaulted, the "facts alleged in the complaint are deemed admitted and the appropriate inquiry is whether the facts as alleged state a claim." *Globalsantafe*, 250 F. Supp. 2d at 612 n.3. Because "the facts as alleged" do "state a claim" here, *id.*, the Court should enter a default judgment of non-infringement of each of the seven Patents-in-Suit.

A.     **Brightpick Did Not and Does Not Infringe the '651 Patent**

On July 31, 2018, the United States Patent and Trademark Office ("P.T.O.") issued U.S. Patent No. 10,035,651, entitled "Storage Systems and Methods for Retrieving Units from a Storage System." Compl. ¶ 36 (citing Docket No. 1-5). The '651 patent concerns a "robotic system for handling bins in a store comprising a grid of stacked units." Compl. ¶ 37 (quoting Docket No. 1-5 at 1:10-11). The '651 patent comprises eight claims, of which claims 1, 5, and 7 are independent. Compl. ¶ 38 (citing Docket No. 1-5 at 20:52 to 22:46). All three independent claims of the '651 patent require "a frame containing a plurality of stacks of containers." Compl. ¶ 39 (citing Docket No. 1-5 at 20:53, 21:23-24, 21:45-46). The specification similarly describes a storage architecture in which "stackable containers, known as bins 10, are stacked on top of one another to form stacks 12." Compl. ¶ 40 (quoting Docket No. 1-5 at 2:39-41).

– 14 –

But Gridpicker does not use "a frame containing a plurality of stacks of containers." Compl. ¶ 41. Instead, Gridpicker uses standard shelving in a traditional warehouse rack-and-aisle layout, with items resting on shelves, rather than stacked on top of each other. *Id.* As "deemed admitted" following Ocado's default, these "facts alleged in the complaint" show that Brightpick has not infringed and does not infringe any claim of the '651 patent either directly, indirectly, contributorily, or by inducement, literally or under the doctrine of equivalents. *Globalsantafe*, 250 F. Supp. 2d at 612 n.3; Compl. ¶¶ 42-43.

**B.**    **Brightpick Did Not and Does Not Infringe the '597 Patent**

On September 1, 2020, the P.T.O. issued U.S. Patent No. 10,759,597, entitled "Robotic Picking Systems and Devices." Compl. ¶ 44 (citing Docket No. 1-6). The '597 patent comprises 24 claims, of which claims 1, 11, and 24 are independent. Compl. ¶ 45 (citing Docket No. 1-6 at 21:26 to 24:26). Independent claims 1 and 11 of the '597 patent require "movement of the device . . . such that the picking device may be positioned above a predetermined container to pick the item." Compl. ¶ 46 (quoting Docket No. 1-6 at 21:46-51, 22:46-51). As the specification explains, "the lifting means 44 of the picking device 230 is placed over a bin 10 in a stack 12 or in a picking area. The lifting means 44 and bin gripper assembly 39 together lift the bin 10 in to the cavity 40 of the device 230, as shown in FIGS. 8c and 8d." Compl. ¶ 46 (quoting Docket No. 1-6 at 10:25-29).

But Gridpicker does not use a "picking device" that is "positioned above a predetermined container to pick the item." Compl. ¶ 47. Instead, Gridpicker picks from a position that is laterally offset from the tote, not from above the tote. *Id.* Independent claim 24 of the '597 patent requires "lifting means for lifting at least one container from beneath a grid into the container receiving space during operation." *Id.* ¶ 48 (quoting Docket No. 1-6 at 24:22-24).

Gridpicker does not use a "lifting means for lifting at least one container from beneath a grid into the container receiving space during operation." Compl. ¶ 49. Instead, as shown above, Gridpicker picks from a position that is laterally offset from the tote, without "lifting" the tote "into the container receiving space during operation." *Id.* As "deemed admitted" following Ocado's default, these "facts alleged in the complaint" show that Brightpick has not infringed and does not infringe any claim of the '597 patent either directly, indirectly, contributorily, or by inducement, literally or under the doctrine of equivalents. *Globalsantafe*, 250 F. Supp. 2d at 612 n.3; Compl. ¶¶ 50-51.

### C.      Brightpick Did Not and Does Not Infringe the '302 Patent

On November 10, 2020, the P.T.O. issued U.S. Patent No. 10,829,302, entitled "Apparatus for Retrieving Units From a Storage System." Compl. ¶ 52 (citing Docket No. 1-7). The '302 patent concerns an "apparatus for retrieving units form [sic] a storage system," and contemplates "robotic devices for handling storage containers or bins in a store comprising a grid of stacked units." Compl. ¶ 53 (alteration in original) (quoting Docket No. 1-7 at 1:6-10). The '302 patent comprises nine claims, of which claims 1 and 5 are independent. Compl. ¶ 54 (citing Docket No. 1-7 at 12:30 to 14:29).

Claim 1 of the '302 patent requires "a framework for defining columns beneath the plural grid spaces for retaining plural stacks of containers located beneath the rails, and configured such that each stack will be located within a footprint of a single grid space." Compl. ¶ 55 (quoting Docket No. 1-7 at 12:35-39). Gridpicker does not use "a framework for defining columns beneath the plural grid spaces for retaining plural stacks of containers located beneath the rails, and configured such that each stack will be located within a footprint of a single grid space."

Compl. ¶ 56.  Instead, Gridpicker uses standard shelving in a traditional warehouse rack-and-aisle layout, with items resting on shelves, rather than stacked on top of each other.  *Id.*

Claim 5 of the '302 patent requires a "load handling device" including "a container-receiving space configured to accommodate a container" and "a wheel assembly having a first set of wheels to be engaged with a first set of parallel rails or tracks of a storage system to guide movement of the device in a first direction and a second set of wheels to be engaged with a second set of parallel rails or tracks of the storage system to guide movement of the device in a second direction, wherein the first and second sets of wheels are arranged around a periphery of the container-receiving space and on an outer surface of the housing."  Compl. ¶ 57 (quoting Docket No. 1-7 at 13:13-27).  Claim 5 thus requires the "container-receiving space configured to accommodate a container" to be on the bottom of the "load handling device," where the wheels are.  *See* Compl. ¶ 57; Docket No. 1-7 at 13:13-31.

But Gridpicker does not use a "load handling device" wherein "first and second sets of wheels are arranged around a periphery of the container-receiving space and on an outer surface of the housing."  Compl. ¶ 58.  Instead, its tote exchange mechanism is based on side-access transfer mechanics:  internal tote platforms extend laterally from the robot body into a neighboring cell for loading.  *Id.*  As "deemed admitted" following Ocado's default, these "facts alleged in the complaint" show that Brightpick has not infringed and does not infringe any claim of the '302 patent either directly, indirectly, contributorily, or by inducement, literally or under the doctrine of equivalents.  *Globalsantafe*, 250 F. Supp. 2d at 612 n.3; Compl. ¶¶ 59-60.

**D.      Brightpick Did Not and Does Not Infringe the '980 Patent**

On March 15, 2022, the P.T.O. issued U.S. Patent No. 11,273,980, entitled "Method and Apparatus for Retrieving Units From a Storage System."  Compl. ¶ 61 (citing Docket No. 1-8).

– 17 –

The '980 patent comprises 38 claims, of which claims 1 and 20 are independent. Compl. ¶ 62 (citing Docket No. 1-8 at 11:28 to 15:22). Both independent claims of the '980 patent require a "load-handling device for lifting and moving containers stacked in stacks in a storage system" with "each stack being located within a footprint of only a single grid space." Compl. ¶ 63 (quoting Docket No. 1-8 at 11:28-33; 13:29-34). The specification similarly describes a storage architecture in which "stackable containers, known as bins 10, are stacked on top of one another to form stacks 12." Compl. ¶ 64 (quoting Docket No. 1-8 at 2:38-40).

Gridpicker does not use "a load-handling device for lifting and moving containers stacked in stacks in a storage system" with "each stack being located within a footprint of only a single grid space." Compl. ¶ 65. Instead, Gridpicker uses standard shelving in a traditional warehouse rack-and-aisle layout, with items resting on shelves, rather than stacked on top of each other. *Id*. As "deemed admitted" following Ocado's default, these "facts alleged in the complaint" show that Brightpick has not infringed and does not infringe any claim of the '980 patent either directly, indirectly, contributorily, or by inducement, literally or under the doctrine of equivalents. *Globalsantafe*, 250 F. Supp. 2d at 612 n.3; Compl. ¶¶ 66-67.

### E.    Brightpick Did Not and Does Not Infringe the '574 Patent

On November 1, 2022, the P.T.O. issued U.S. Patent No. 11,485,574, entitled "Transporting Device Position Determining Apparatus and Method." Compl. ¶ 68 (citing Docket No. 1-9). The '574 patent comprises 17 claims, of which claims 1, 13, and 17 are independent. *Id*. ¶ 69 (citing Docket No. 1-9 at 17:2 to 19:31). All three independent claims of the '574 patent require "a plurality of stacks of containers located beneath the rails, and arranged such that each stack is located within a footprint of a single grid space" or "the containers being stored in a facility, the facility being arranged to store the containers in a plurality of stacks." Compl. ¶ 70

(quoting Docket No. 1-9 at 17:13-15; 18:25-27; 19:8-10). The specification similarly describes a storage architecture in which "stackable containers, known as bins 10, are stacked on top of one another to form stacks 12." Compl. ¶ 71 (quoting Docket No. 1-9 at 1:42-44).

But Gridpicker does not use "a plurality of stacks of containers located beneath the rails, and arranged such that each stack is located within a footprint of a single grid space" or "the containers being stored in a facility, the facility being arranged to store the containers in a plurality of stacks." Compl. ¶ 72. Instead, Gridpicker uses standard shelving in a traditional warehouse rack-and-aisle layout, with items resting on shelves, rather than stacked on top of each other. *Id.* As "deemed admitted" following Ocado's default, these "facts alleged in the complaint" show that Brightpick has not infringed and does not infringe any claim of the '574 patent either directly, indirectly, contributorily, or by inducement, literally or under the doctrine of equivalents. *Globalsantafe*, 250 F. Supp. 2d at 612 n.3; Compl. ¶¶ 73-74.

F.      **Brightpick Did Not and Does Not Infringe the '405 Patent**

On November 22, 2022, the P.T.O. issued U.S. Patent No. 11,505,405, entitled "Picking Systems and Methods." *Id.* ¶ 75 (citing Docket No. 1-10). The '405 patent comprises 20 claims, of which claims 1, 15, and 16 are independent. *Id.* ¶ 76 (citing Docket No. 1-10 at 22:6 to 24:47). All three independent claims of the '405 patent require "a first set of parallel rails or tracks and a second set of parallel rails or tracks extending substantially perpendicularly to the first set in a substantially horizontal plane to form a grid pattern with a plurality of grid spaces" or "a first set of parallel rails or tracks, and a second set of parallel rails or tracks extending substantially perpendicularly to the first set in a substantially horizontal plane to form a grid pattern with a plurality of grid spaces," Compl. ¶ 77 (quoting Docket No. 1-10 at 22:8-12, 23:16-20, 24:5-9), and "a robotic load handling device containing at least one delivery container

– 19 –

and configured to travel on the first and second sets of rails or tracks." Compl. ¶ 77 (quoting Docket No. 1-10 at 22:16-18, 23:23-25, 24:13-15). All three independent claims of the '405 patent further require "a robotic picking device arranged to operate above the plurality of grid spaces." Compl. ¶ 78 (quoting Docket No. 1-10 at 22:23-24, 23:28-30, 24:21-22). The independent claims thus require two robots, both operating above the items stored in the warehouse. Compl. ¶ 78.

But Gridpicker does not use "a robotic load handling device containing at least one delivery container and configured to travel on the first and second sets of rails or tracks." *Id.* ¶ 79. Instead, Gridpicker uses standard shelving in a traditional warehouse rack-and-aisle layout, and robots that operate at the level of those shelves, bringing totes up to the top level when the Gridpicker robots need them, and removing them from the top level when they do not. *Id.* As "deemed admitted" following Ocado's default, these "facts alleged in the complaint" show that Brightpick has not infringed and does not infringe any claim of the '405 patent either directly, indirectly, contributorily, or by inducement, literally or under the doctrine of equivalents. *Globalsantafe*, 250 F. Supp. 2d at 612 n.3; Compl. ¶¶ 80-81.

G.    **Brightpick Did Not and Does Not Infringe the '832 Patent**

On December 24, 2024, the P.T.O. issued U.S. Patent No. 12,172,832, entitled "Apparatus for Retrieving Units from a Storage System." Compl. ¶ 82 (citing Docket No. 1-11). The '832 patent comprises nine claims, of which claim 1 is independent. Compl. ¶ 83 (citing Docket No. 1-11 at 12:28 to 14:19). Independent claim 1 of the '832 patent requires "a container lifting device positioned in the housing and comprising a container-lift motor configured to lift a container into the container receiving space from a stack of containers within the grid frame beneath the top level." Compl. ¶ 84 (quoting Docket No. 1-11 at 12:49-53). The specification

– 20 –

similarly describes a storage architecture in which "stackable containers, known as bins 10, are stacked on top of one another to form stacks 12." Compl. ¶ 85 (quoting Docket No. 1-11 at 2:38-40). But Gridpicker does not use "a stack of containers within the grid frame beneath the top level." Compl. ¶ 86. Instead, Gridpicker uses standard shelving in a traditional warehouse rack-and-aisle layout. *Id.* As "deemed admitted" following Ocado's default, these "facts alleged in the complaint" show that Brightpick has not infringed and does not infringe any claim of the '832 patent either directly, indirectly, contributorily, or by inducement, literally or under the doctrine of equivalents. *Globalsantafe*, 250 F. Supp. 2d at 612 n.3; Compl. ¶¶ 87-88.

### III.    The Court Should Enter Declaratory Relief

"The court, in its discretion, also considers 1) 'whether the judgment will serve a useful purpose in clarifying the legal relations in issue'; or 2) 'whether the judgment will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.'" *Comfort Wheels*, 2021 WL 4219265, at *4 (quoting *White v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa*, 913 F.2d 165, 168 (4th Cir. 1990)). Default judgment will serve a useful purpose in clarifying Ocado's infringement allegations against Brightpick and will terminate and afford necessary relief from the uncertainty giving rise to this case. By securing a declaration of non-infringement regarding the Patents-in-Suit, Brightpick will be able "to prevent [Ocado] from interfering with its ability to sell" Gridpicker—"relieving [Brightpick] from the insecurity, uncertainty, and controversy arising from [Ocado's] use of the [Patents-in-Suit] against plaintiff." *Comfort Wheels*, 2021 WL 4219265, at *5.

– 21 –

## CONCLUSION

For the foregoing reasons, the Court should grant Brightpick's motion and enter default judgment against Ocado.

Date: May 18, 2026                                    Respectfully submitted,

*/s/ Rebecca S. LeGrand*
Rebecca S. LeGrand
Virginia Bar No. 89859
LEGRAND LAW PLLC
1100 H Street NW, Suite 1220
Washington, D.C., 20005
+1 (202) 587-5725
+1 (202) 587-5610 facsimile
rebecca@legrandpllc.com

Erika H. Warren (*pro hac vice*)
Matthew S. Warren (*pro hac vice*)
Jacob A. Kamstra (*pro hac vice*)
Madeline A. Woodall (*pro hac vice*)
WARREN LLP
2261 Market Street, No. 606
San Francisco, California, 94114
+1 (415) 895-2940
+1 (415) 895-2964 facsimile
26-305@cases.warrenllp.com

*Attorneys for Plaintiff Brightpick Inc.*

**CERTIFICATE OF SERVICE**

I certify that on May 18, 2026, a copy of the foregoing Memorandum was filed

electronically using the Court's CM/ECF system with service to defendants made via Express

Mail at the following addresses:

Ocado Innovation Ltd.
Buildings One & Two Trident Place
Place Mosquito Way
Hatfield, Hertfordshire, AL 10 9UL
9UL United Kingdom

Ocado Solutions Ltd.
Buildings One & Two Trident
Mosquito Way
Hatfield, Hertfordshire, AL 10
United Kingdom

Date:  May 18, 2026

*/s/ Rebecca S. LeGrand*
Rebecca S. LeGrand
Virginia Bar No. 89859
LEGRAND LAW PLLC
1100 H Street NW, Suite 1220
Washington, D.C., 20005
+1 (202) 587-5725
+1 (202) 587-5610 facsimile
rebecca@legrandpllc.com

Erika H. Warren (*pro hac vice*)
Matthew S. Warren (*pro hac vice*)
Jacob A. Kamstra (*pro hac vice*)
Madeline A. Woodall (*pro hac vice*)
WARREN LLP
2261 Market Street, No. 606
San Francisco, CA 94114
+1 (415) 895-2940
+1 (415) 895-2964
facsimile

*Attorneys for Plaintiff Brightpick Inc.*