**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

| | |
|---|---|
| BRIGHTPICK, INC. ) | Case No. 3:26-cv-00305 |
| ) | |
| Plaintiff, ) | |
| v. ) | **JURY TRIAL DEMANDED** |
| ) | |
| OCADO INNOVATION LTD. and ) | |
| OCADO SOLUTIONS LTD., ) | |
| ) | |
| ) | |
| Defendants. ) | |
| ) | |
| ) | |

**DEFENDANTS' ANSWER TO THE COMPLAINT AND COUNTERCLAIMS AGAINST**
**PLAINTIFF**

Defendants Ocado Innovation Ltd. and Ocado Solutions Ltd. (together, "Ocado") respectfully submit their Answer and Counterclaims in response to the Complaint brought by Plaintiff Brightpick, Inc. ("Brightpick"), filed on April 12, 2026 (Dkt. No. 1).  To the extent relevant, the allegations in support of Ocado's Counterclaims, as set forth below, are incorporated by reference into its Answer to Brightpick's Complaint.

**ANSWER TO BRIGHTPICK'S COMPLAINT**

**NATURE OF THE ACTION**

1.      Paragraph 1 consists of a prefatory statement to which no response is required.

**THE PARTIES**

2.      Ocado admits the allegations set forth in Paragraph 2.

3.      Ocado admits the allegations set forth in Paragraph 3.

4.      Ocado lacks knowledge and information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 4 and thus denies these allegations.

-1-

5.      Ocado admits the allegations set forth in Paragraph 5.

6.      Ocado admits the allegations set forth in Paragraph 6.

7.      Ocado admits the allegations set forth in Paragraph 7.

8.      Ocado admits the allegations set forth in Paragraph 8.

## JURISDICTION AND VENUE

9.      Paragraph 9 contains legal conclusions to which no response is required.  To the extent a response is required, Ocado denies the allegations set forth in Paragraph 9, except admits that Brightpick's claims arise under at least 35 U.S.C. §§ 1-390.

10.      Paragraph 10 contains legal conclusions to which no response is required.  To the extent a response is required, Ocado denies the allegations set forth in Paragraph 10, except admits that, for purposes of this action alone, this Court has jurisdiction pursuant to at least 28 U.S.C. §§ 1331 and 1338(a) and that a justiciable controversy exists between Brightpick and Ocado concerning Brightpick's infringement of the Patents-in-Suit.

11.      Paragraph 11 contains legal conclusions to which no response is required.  To the extent a response is required, Ocado denies the allegations set forth in Paragraph 11, except admits that, for purposes of this action alone, this Court has personal jurisdiction over Ocado.

12.      Paragraph 12 contains legal conclusions to which no response is required.  To the extent a response is required, Ocado denies the allegations set forth in Paragraph 12, except admits that, for purposes of this action alone, venue is proper in this District.

## BACKGROUND

13.      Ocado lacks knowledge and information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 13 and thus denies the allegations.

14.      Ocado lacks knowledge and information sufficient to form a belief as to the truth of the allegations in Paragraph 14 and thus denies the allegations, except admits that Brightpick

makes and sells a system called Autopicker and makes and sells robots to collect goods from warehouses to fulfill orders.

15.     Ocado lacks knowledge and information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 15 and thus denies the allegations.

16.     Ocado lacks knowledge and information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 16 and thus denies the allegations.

17.     Ocado denies the allegations set forth in Paragraph 17, except admits that Ocado provides automated storage and retrieval systems.

18.     Ocado denies the allegations set forth in Paragraph 18, except admits that in the current Ocado Storage and Retrieval System (OSRS), its robots travel above the contents of the grid, its robots manipulate stacks of containers, and, if it is necessary to retrieve a bin that is not located on the top of a stack, its robots move the overlying bins to allow access to the target bin.

19.     Ocado denies the allegations set forth in Paragraph 19, except admits that Brightpick announced its Gridpicker robotic fulfillment system on March 17, 2026.

20.     Ocado lacks knowledge and information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 20 and thus denies them, except admits that the Gridpicker system includes totes that hold items available for picking, robots that pick items from the totes, including totes on the top shelf of each rack, and separate robots that move through aisles, pull target totes from shelves, and move them to the top of the Gridpicker storage structure.

21.     Ocado denies the allegations set forth in Paragraph 21, except admits that Exhibit 1 to the Complaint purports to be a copy of an article by Sarah Butler published in

*The Guardian* and that Ocado's share price was £1.87 at certain points in April 2026, and that Ocado's share price was or approximated £28.08 at certain points in 2021.

22.     Ocado denies the allegations set forth in Paragraph 22.

23.     Ocado admits the allegations set forth in Paragraph 23.

24.     Ocado admits the allegations set forth in Paragraph 24.

25.     Ocado admits the allegations set forth in Paragraph 25.

26.     Ocado admits the allegations set forth in Paragraph 26.

27.     Ocado admits the allegations set forth in Paragraph 27.

28.     Ocado denies the allegations set forth in Paragraph 28, except admits that the Regional Court of Düsseldorf granted Ocado's application on March 24, that Ocado's application had "request[ed] that the decision be made without prior oral proceedings[] to issue a hearing (ex parte)," and that Ocado's application stated that, given Ocado's previous letter to Brightpick and the passage of the requested time for a response, "[Brightpick's] procedural right to be heard was preserved." (Dkt. 1, Ex. 3 at 2, 35.)

29.     Ocado admits the allegations set forth in Paragraph 29.

30.     Ocado denies the allegations set forth in Paragraph 30, except admits that the photograph set forth in Paragraph 30 purports to show a Brightpick installation covered in part.

31.     Ocado denies the allegations set forth in Paragraph 31, except admits that, at the recommendation of the LogiMAT trade show security team, Ocado enlisted police support to inspect the infringing Brightpick installation at the trade fair.

32.     Ocado admits the allegations set forth in Paragraph 32.

33.     Ocado denies the allegations set forth in Paragraph 33, except admits that its first communication to Brightpick about the MODEX exhibition occurred on April 9, 2026.

34.     Ocado admits the allegations set forth in Paragraph 34.

35.     Paragraph 35 consists of a prefatory statement to which no response is required.

## THE '651 PATENT

36.     Ocado admits the allegations set forth in Paragraph 36.

37.     Ocado denies the allegations set forth in Paragraph 37, except admits that the '651 patent states, "In particular, but not exclusively, the invention relates to a robotic system for handling bins in a store comprising a grid of stacked units" at column 1, lines 8-11.

38.     Ocado admits the allegations set forth in Paragraph 38.

39.     Paragraph 39 contains a legal conclusion to which no response is required.  To the extent a response is required, Ocado denies the allegations set forth in Paragraph 39, except admits that all three independent claims of the '651 patent recite "a frame containing a plurality of stacks of containers," among other limitations.

40.     Ocado denies the allegations set forth in Paragraph 40, except admits that the '651 patent states, "As shown in FIGS. 1 and 2, stackable containers, known as bins 10, are stacked on top of one another to form stacks 12" at column 2, lines 39-41.

41.     Ocado denies the allegations set forth in Paragraph 41.

42.     Ocado denies the allegations set forth in Paragraph 42.

43.     Ocado denies the allegations set forth in Paragraph 43.

## THE '597 PATENT

44.     Ocado admits the allegations set forth in Paragraph 44.

45.     Ocado admits the allegations set forth in Paragraph 45.

46.     Paragraph 46 contains a legal conclusion to which no response is required.  To the extent a response is required, Ocado denies the allegations set forth in Paragraph 46, except admits that Claims 1 and 11 of the '597 patent recite, "the wheel assembly comprising a first set

of wheels for engaging with the first set of rails or tracks to guide movement of the device in a first direction and a second set of wheels for engaging with the second set of rails or tracks to guide movement of the device in a second direction such that the picking device may be positioned above a predetermined container to pick the item," among other limitations. Ocado further admits that the '597 patent states, "In use, the lifting means 44 of the picking device 230 is placed over a bin 10 in a stack 12 or in a picking area. The lifting means 44 and bin gripper assembly 39 together lift the bin 10 in to the cavity 40 of the device 230, as shown in FIGS. 8c and 8d" at column 10, lines 25-29, and that Paragraph 46 purports to include Figures 8c and 8d of the '597 Patent.

47.     Ocado denies the allegations set forth in Paragraph 47.

48.     Paragraph 48 contains a legal conclusion to which no response is required. To the extent a response is required, Ocado denies the allegations set forth in Paragraph 48, except admits that claim 24 of the '597 patent recites "lifting means for lifting at least one container from beneath a grid into the container receiving space during operation," among other limitations, and that the '597 patent states, "The lifting means 44 and bin gripper assembly 39 together lift the bin 10 into the cavity 40 of the device 230, as shown in FIGS. 8c and 8d" at column 10, lines 26-29.

49.     Ocado denies the allegations set forth in Paragraph 49.

50.     Ocado denies the allegations set forth in Paragraph 50.

51.     Ocado denies the allegations set forth in Paragraph 51.

## THE '302 PATENT

52.     Ocado admits the allegations set forth in Paragraph 52.

53.     Ocado denies the allegations set forth in Paragraph 53, except admits that the '302 patent states, "The present invention relates to apparatus for retrieving units form a storage

-6-

system. In particular, but not exclusively, the invention relates to robotic devices for handling storage containers or bins in a store comprising a grid of stacked units" at column 1, lines 6-10.

54.    Ocado admits the allegations set forth in Paragraph 54.

55.    Paragraph 55 contains a legal conclusion to which no response is required.  To the extent a response is required, Ocado denies the allegations set forth in Paragraph 55, except admits that claim 1 of the '302 patent recites "a framework for defining columns beneath the plural grid spaces for retaining plural stacks of containers located beneath the rails, and configured such that each stack will be located within a footprint of a single grid space," among other limitations.

56.    Ocado denies the allegations set forth in Paragraph 56.

57.    Paragraph 57 contains legal conclusions to which no response is required.  To the extent a response is required, Ocado denies the allegations set forth in Paragraph 57, except admits that claim 5 of the '302 patent recites "a load handling device," "a container-receiving space configured to accommodate a container," "a wheel assembly having a first set of wheels to be engaged with a first set of parallel rails or tracks of a storage system to guide movement of the device in a first direction and a second set of wheels to be engaged with a second set of parallel rails or tracks of the storage system to guide movement of the device in a second direction," and wherein the first and second sets of wheels are arranged around a periphery of the container-receiving space and on an outer surface of the housing," among other limitations.

58.    Ocado denies the allegations set forth in Paragraph 58.

59.    Ocado denies the allegations set forth in Paragraph 59.

60.    Ocado denies the allegations set forth in Paragraph 60.

### THE '980 PATENT

61.    Ocado admits the allegations set forth in Paragraph 61.

-7-

62.     Ocado admits the allegations set forth in Paragraph 62.

63.     Ocado states that Paragraph 63 contains a legal conclusion to which no response is required.  To the extent a response is required, Ocado denies the allegations set forth in Paragraph 63, except admits that both independent claims of the '980 patent recite "[a] load-handling device for lifting and moving containers stacked in stacks in a storage system" and "each stack being located within a footprint of only a single grid space," among other limitations.

64.     Ocado denies the allegations set forth in Paragraph 64, except admits that the '980 patent states, "As shown in FIGS. 1 and 2, stackable containers, known as bins 10, are stacked on top of one another to form stacks 12" at column 2, lines 38-40.

65.     Ocado denies the allegations set forth in Paragraph 65.

66.     Ocado denies the allegations set forth in Paragraph 66.

67.     Ocado denies the allegations set forth in Paragraph 67.

### THE '574 PATENT

68.     Ocado admits the allegations set forth in Paragraph 68.

69.     Ocado admits the allegations set forth in Paragraph 69.

70.     Paragraph 70 contains legal conclusions to which no response is required.  To the extent a response is required, Ocado denies the allegations set forth in Paragraph 70, except admits that independent claims 1 and 17 of the '574 patent recite "a plurality of stacks of containers located beneath the rails, and arranged such that each stack is located within a footprint of a single grid space," among other limitations, and that independent claim 13 of the '574 patent recites "the containers being stored in a facility, the facility being arranged to store the containers in a plurality of stacks," among other limitations.

71.    Ocado denies the allegations set forth in Paragraph 71, except admits that the '574 patent states, "As shown in FIGS. 1 and 2, stackable containers, known as bins 10, are stacked on top of one another to form stacks 12" at 1:42-44.

72.    Ocado denies the allegations set forth in Paragraph 72.

73.    Ocado denies the allegations set forth in Paragraph 73.

74.    Ocado denies the allegations set forth in Paragraph 74.

## THE '405 PATENT

75.    Ocado admits the allegations set forth in Paragraph 75.

76.    Ocado admits the allegations set forth in Paragraph 76.

77.    Paragraph 77 contains legal conclusions to which no response is required.  To the extent a response is required, Ocado denies the allegations set forth in Paragraph 77, except admits that all of the independent claims of the '405 patent recite "a first set of parallel rails or tracks[,] and a second set of parallel rails or tracks extending substantially perpendicularly to the first set in a substantially horizontal plane to form a grid pattern with a plurality of grid spaces" and "a robotic load handling device containing at least one delivery container and configured to travel on the first and second sets of rails or tracks," among other limitations.

78.    Paragraph 78 contains legal conclusions to which no response is required.  To the extent a response is required, Ocado denies the allegations set forth in Paragraph 78, except admits that all three independent claims of the '405 patent recite "a robotic picking device arranged to operate above the plurality of grid spaces," among other limitations.

79.    Ocado denies the allegations set forth in Paragraph 79.

80.    Ocado denies the allegations set forth in Paragraph 80.

81.    Ocado denies the allegations set forth in Paragraph 81.

**THE '832 PATENT**

82.     Ocado admits the allegations set forth in Paragraph 82.

83.     Ocado admits the allegations set forth in Paragraph 83.

84.     Paragraph 84 contains a legal conclusion to which no response is required.  To the extent a response is required, Ocado denies the allegations set forth in Paragraph 84, except admits that claim 1 of the '832 patent recites "a container lifting device positioned in the housing and comprising a container-lift motor configured to lift a container into the container receiving space from a stack of containers within the grid frame beneath the top level," among other limitations.

85.     Ocado denies the allegations set forth in Paragraph 85, except admits that the '832 patent states, "As shown in FIGS. 1 and 2, stackable containers, known as bins 10, are stacked on top of one another to form stacks 12" at 2:38-40.

86.     Ocado denies the allegations set forth in Paragraph 86.

87.     Ocado denies the allegations set forth in Paragraph 87.

88.     Ocado denies the allegations set forth in Paragraph 88.

**COUNT I OF BRIGHTPICK'S COMPLAINT**

89.     Ocado incorporates by reference all the above and below answering paragraphs and all the below allegations in support of Ocado's Counterclaims.

90.     Ocado admits the allegations set forth in Paragraph 90.

91.     Ocado denies the allegations set forth in Paragraph 91.

92.     Paragraph 92 contains legal conclusions to which no response is required.  To the extent that a response is required, Ocado denies the allegations set forth in Paragraph 92, except admits that, for purposes of this action alone, an actual controversy exists between Brightpick and Ocado regarding whether Brightpick infringes or has infringed the '651 patent.

## COUNT II OF BRIGHTPICK'S COMPLAINT

93.    Ocado incorporates by reference all the above and below answering paragraphs and all the below allegations in support of Ocado's Counterclaims.

94.    Ocado admits the allegations set forth in Paragraph 94.

95.    Ocado denies the allegations set forth in Paragraph 95.

96.    Paragraph 96 contains legal conclusions to which no response is required. To the extent that a response is required, Ocado denies the allegations set forth in Paragraph 96, except admits that, for purposes of this action alone, an actual controversy exists between Brightpick and Ocado regarding whether Brightpick infringes or has infringed the '597 patent.

## COUNT III OF BRIGHTPICK'S COMPLAINT

97.    Ocado incorporates by reference all the above and below answering paragraphs and all the below allegations in support of Ocado's Counterclaims.

98.    Ocado admits the allegations set forth in Paragraph 98.

99.    Ocado denies the allegations set forth in Paragraph 99.

100.    Paragraph 100 contains legal conclusions to which no response is required. To the extent that a response is required, Ocado denies the allegations set forth in Paragraph 100, except admits that, for purposes of this action alone, an actual controversy exists between Brightpick and Ocado regarding whether Brightpick infringes or has infringed the '302 patent.

## COUNT IV OF BRIGHTPICK'S COMPLAINT

101.    Ocado incorporates by reference all the above and below answering paragraphs and all the below allegations in support of Ocado's Counterclaims.

102.    Ocado admits the allegations set forth in Paragraph 102.

103.    Ocado denies the allegations set forth in Paragraph 103.

104.    Paragraph 104 contains legal conclusions to which no response is required.  To the extent that a response is required, Ocado denies the allegations set forth in Paragraph 104, except admits that, for purposes of this action alone, an actual controversy exists between Brightpick and Ocado regarding whether Brightpick infringes the '980 patent.

### COUNT V OF BRIGHTPICK'S COMPLAINT

105.    Ocado incorporates by reference all the above and below answering paragraphs and all the below allegations in support of Ocado's Counterclaims.

106.    Ocado admits the allegations set forth in Paragraph 106.

107.    Ocado denies the allegations set forth in Paragraph 107.

108.    Paragraph 108 contains legal conclusions to which no response is required.  To the extent that a response is required, Ocado denies the allegations set forth in Paragraph 108, except admits that, for purposes of this action alone, an actual controversy exists between Brightpick and Ocado regarding whether Brightpick infringes the '574 patent.

### COUNT VI OF BRIGHTPICK'S COMPLAINT

109.    Ocado incorporates by reference all the above and below answering paragraphs and all the below allegations in support of Ocado's Counterclaims.

110.    Ocado admits the allegations set forth in Paragraph 110.

111.    Ocado denies the allegations set forth in Paragraph 111.

112.    Paragraph 112 contains legal conclusions to which no response is required.  To the extent that a response is required, Ocado denies the allegations set forth in Paragraph 112, except admits that, for purposes of this action alone, an actual controversy exists between Brightpick and Ocado regarding whether Brightpick infringes the '405 patent.

## COUNT VII OF BRIGHTPICK'S COMPLAINT

113.    Ocado incorporates by reference all the above and below answering paragraphs and all the below allegations in support of Ocado's Counterclaims.

114.    Ocado admits the allegations set forth in Paragraph 114.

115.    Ocado denies the allegations set forth in Paragraph 115.

116.    Paragraph 116 contains legal conclusions to which no response is required.  To the extent that a response is required, Ocado denies the allegations set forth in Paragraph 116, except admits that, for purposes of this action alone, an actual controversy exists between Brightpick and Ocado regarding whether Brightpick infringes the '832 patent.

## PRAYER FOR RELIEF

Ocado denies that Brightpick is entitled to any relief and respectfully requests a judgment against Brightpick as follows:

A.    Judgment on Brightpick's Claims in favor of Ocado;

B.    Dismissal of Brightpick's Claims with prejudice; and

C.    Such other and further relief as this Court deems just and proper.

## JURY DEMAND

No response is required to Brightpick's request for a jury trial.  Ocado also requests a jury trial for all issues so triable.

## OCADO'S COUNTERCLAIMS

### INTRODUCTION

1. This case is about a latecomer's unlawful use of pioneering technology from the market-leading innovator in automated storage and retrieval systems. Ocado is the recognized leader in grid-based robotic warehouse automation, having spent more than two decades and enormous resources inventing, building, and refining the storage-and-retrieval systems that define the field. Brightpick, by contrast, is a recent entrant that did not invent these systems but instead adopted Ocado's patented innovations as its own. Ocado seeks to protect its groundbreaking patented inventions and to stop Brightpick from profiting from the use of Ocado's patented inventions in competing offerings. Ocado's infringement counterclaims should come as no surprise to Brightpick. Indeed, Brightpick was so aware of Ocado's patents, and Brightpick's infringement of Ocado's patents, that Brightpick had "in the can" a declaratory judgment complaint that it filed *immediately* after Ocado approached Brightpick to start a commercial conversation regarding Brightpick's infringement of Ocado's U.S. patents.

2. Founded in 2000 and operating its first automated warehouse by 2002, Ocado conceived of a fundamentally new approach to order fulfillment: a dense, three-dimensional grid of storage bins served by a fleet of robots that travel across the top of the grid, retrieve bins from below, and deliver them for picking. Ocado developed this technology—including the storage grid, the load-handling robots, the control software that coordinates them, and the robotic picking systems—through sustained in-house research and development, and it protected its inventions through an extensive worldwide patent portfolio that includes the Patents-in-Suit.

3. As a result of its extensive research and development efforts, Ocado now holds a global portfolio of patents that cover a variety of systems and methods used in its automated storage and retrieval systems, or that may be used for such systems in the future. Those patents

include, but are not limited to, U.S. Patent No. 10,035,651 (the "'651 Patent"), U.S. Patent No. 10,759,597 (the "'597 Patent"), U.S. Patent No. 10,829,302 (the "'302 Patent"), U.S. Patent No. 11,273,980 (the "'980 Patent"), U.S. Patent No. 11,485,574 (the "'574 Patent"), U.S. Patent No. 11,505,405 (the "'405 Patent"), U.S. Patent No. 12,172,832 (the "'832 Patent"), and U.S. Patent No. 11,079,770 (the "'770 Patent") (collectively, "the Patents-in-Suit").

4.        Brightpick holds itself out as a supplier of a system with "robots [that] enable warehouses of any size to fully automate order picking, buffering, consolidation, dispatch, and stock replenishment" and "allow[] companies to keep their warehouse labor to a minimum."[1]  In contrast to Ocado, Brightpick is a latecomer copyist, not an innovator in the field.  Brightpick was not founded until 2021—nearly two decades after Ocado began developing its patented automated warehouse systems[2] and years after Ocado had deployed its robots[3] and filed for or obtained most of the Patents-in-Suit.  Rather than develop different and new technology, Brightpick built and promoted a system, including its "Gridpicker" product, that practices the inventions that Ocado pioneered and patented.  Brightpick has, in short, unlawfully used Ocado's patented inventions to enter belatedly the automated storage and retrieval space.  Brightpick's conduct is wrong not only because it constitutes U.S. patent infringement but because it seeks to capitalize on Ocado's decades of investment, which introduced this patented technology to the market and built familiarity and demand for it.

---

[1] *Most Commonly Asked Questions About Gridpicker*, BRIGHTPICK, https://brightpick.ai/resources/most-commonly-asked-questions-about-gridpicker/ (last visited June 9, 2026) (Ex. 1).

[2] *See About Us*, OCADO, https://www.ocadogroup.com/about-us (last visited June 29, 2026) (Ex. 2).

[3] *See Our History*, OCADO, https://www.ocadogroup.com/about-us/our-history (last visited June 29, 2026) (Ex. 3).

5.      When Ocado became aware of Brightpick's infringement of Ocado's U.S. patents, Ocado notified Brightpick of Ocado's concerns and invited a good-faith discussion of a commercial resolution.   Brightpick responded not by addressing the substance of Ocado's concerns, but by racing to the courthouse and recasting Ocado's legitimate enforcement of its patent rights as the conduct of an unreasonable, threatening, and failing company.  That narrative is a false distraction.  The reality is straightforward.  Ocado must, for its shareholders, protect its long-held, valuable, and groundbreaking patented inventions, and Ocado must prevent a latecomer and copyist from infringing them.

## THE PARTIES

6.      Counterclaimant Ocado Innovation Ltd. is an entity organized under the laws of the United Kingdom, with its principal place of business located at Buildings One & Two, Trident Place, Mosquito Way, Hatfield, Hertfordshire, AL10 9UL, United Kingdom. Ocado Innovation is the assignee of the Patents-in-Suit, and it is a wholly owned subsidiary of Ocado Group plc. Ocado Innovation has licensed the Patents-in-Suit to Ocado Solutions.

7.      Counterclaimant Ocado Solutions Ltd. is an entity organized under the laws of the United Kingdom, with its principal place of business located at Buildings One & Two, Trident Place, Mosquito Way, Hatfield, Hertfordshire, AL10 9UL, United Kingdom. Ocado Solutions is a wholly owned subsidiary of Ocado Group plc.  Ocado Solutions is a licensee holding all substantial rights to the Patents-in-Suit.

8.      Counterclaimants Ocado Innovation Ltd. and Ocado Solutions Ltd (together, "Ocado") develop and commercialize advanced robotics, automation, and artificial-intelligence technologies for the storage, retrieval, and fulfillment of consumer goods.

9.      Counter-defendant Brightpick Inc. ("Brightpick") is a company organized and existing under the laws of the State of Delaware, with its principal place of business at 8801 Wall

-16-

Street, Suite 840, Austin, Texas 78754.  Brightpick is a wholly owned subsidiary of Brightpick s.r.o., a Slovakian company headquartered in Slovakia.

10. Brightpick was founded in 2021 and purports to specialize in warehouse automation.[4]  Brightpick began as Photoneo, a three-dimensional vision and sensing technology company.  On March 5, 2025, Photoneo—which Brightpick describes as "the former sister company of Brightpick under the Photoneo Brightpick Group umbrella"—announced that it had been acquired by Zebra Technologies.[5]  The remaining, unsold portion of the Photoneo Brightpick Group continued as Brightpick and turned its focus to "robots to automate warehouse operations."[6]  After the sale of Photoneo, Photoneo s.r.o. changed its name to Brightpick s.r.o. Brightpick did not pivot to warehouse automation because it had developed new technology for automated storage and retrieval systems. Instead, by its founders' own account, Brightpick pivoted because this established field was lucrative.[7]

## JURISDICTION AND VENUE

11. This Court has subject matter jurisdiction over this patent infringement action, brought under Title 35 of the United States Code, pursuant to 28 U.S.C. §§ 1331 and 1338(a).

12. This Court has personal jurisdiction over Brightpick because, *inter alia*, Brightpick submitted to the personal jurisdiction of this Court by filing its Complaint.

---

[4] *About Us: Our Journey*, BRIGHTPICK, https://brightpick.ai/about-us/ (last visited June 10, 2026) (Ex. 4).

[5] *Zebra Technologies Closes Photoneo Acquisition with Photoneo Brightpick Group*, BRIGHTPICK, https://brightpick.ai/zebra-technologies-closes-photoneo-acquisition-with-photoneo-brightpick-group/ (last visited June 29, 2026) (Ex. 5).

[6] *Id.*

[7] *See* BRIGHTPICK, *Reimagining warehouse robotics – Jan Zizka (Founder, Brightpick and Photoneo)*, at 11:35-11:51 (YouTube, July 22, 2024), https://www.youtube.com/watch?v=VSAg5dnOmvg.

13.     Venue in this Court is proper because, *inter alia*, Brightpick has submitted to the venue of this Court by filing its Complaint.

## BACKGROUND

### A.     The Challenges of Online Order Fulfillment

14.     Online order fulfillment can pose several challenges.  For example, a single customer grocery order may contain dozens of items spanning an enormous range of sizes, shapes, weights, and fragilities; may need to be assembled across different temperatures; and typically must be fulfilled at high speed, with high accuracy, and at low cost.

15.     Historically, order fulfillment facilities required a large workforce of pickers to manually retrieve items off shelves in expansive warehouses.  The warehouses were filled with empty, unused space between and above shelves of inventory.  Conventional automated warehouses sought to meet demand using fixed cranes, shelves, and extensive networks of conveyor belts.  Such systems were slow, prone to bottlenecks, and difficult to scale, because a disruption at any single point could disable large portions of the operation.

### B.     Ocado's Automated Storage and Retrieval System

16.     To overcome the limitations of conventional automated warehousing, Ocado conceived a fundamentally different technological approach to automated storage and retrieval. Rather than moving goods horizontally on conveyors, Ocado developed a dense, three-dimensional storage structure in which products are held in containers or bins arranged in vertical columns.  The bins are organized within a rigid framework, the top of which carries a grid of rails arranged in two sets of tracks running substantially perpendicular to one another. The bins are accessed by robots.  Ocado's system is inherently self-organizing because the products retrieved more frequently migrate toward the tops of the columns of bins, keeping high-demand items readily accessible.

### C.    Ocado's "Bots"

17.    A fleet of robots, which Ocado refers to as "bots," operates on top of the grid. Each bot is configured to travel across the grid in two perpendicular directions and to position itself above any bin column. The figures below illustrate examples.



18.    Each bot is equipped with a device that enables the bot to retrieve containers containing items that will be picked to fulfill customer orders.  Coordinating a fleet of bots moving at high speed and in proximity presents a formidable control problem, which Ocado solved through proprietary systems.  Ocado's control system communicates with each bot many times per second, continuously determining each bot's position, planning optimal routes, preventing collisions, and orchestrating bin delivery.  Ocado's technology has been described as functioning as a fully automated "air-traffic-control" system.  Ocado's control technology also manages the health and availability of the fleet, allocating tasks among bots and scheduling charging, maintenance, and servicing based on factors including each bot's battery condition and operational status, so that a large fleet can operate continuously and reliably.

19.    Another complex step in fulfilling an order is picking individual items from a storage bin for a customer's order, which human workers historically performed.  To automate

this task as well, Ocado developed robotic picking devices that operate on top of the grid. Ocado's robotic picking technology employs a robotic arm, together with computer vision and advanced sensing, to identify an item within a source bin, grasp and remove that item, and deposit it directly into a delivery container. Ocado's current picking technology deploys artificial intelligence, including machine learning, reinforcement learning, and behavioral cloning—in an inventive way to enable its robotic arms to handle a vast and varied range of items (including items the system has not previously encountered and items that are delicate or irregularly shaped), improve robot performance over time, and share what the robots learn across Ocado's fleet. Ocado's automated picking technology enables order fulfillment with substantially reduced manual labor and is a central component of Ocado's pursuit of fully automated, end-to-end order fulfillment.

20. In the technology and logistics industries, Ocado is widely regarded as a pioneer and leader in automated storage, retrieval, and order-fulfillment technology, and its systems have been described in the trade and technology press as non-conventional, inventive, and among the most advanced and effective warehouse-automation solutions in the world. For example, Ocado's robotic fleet and the software that coordinates it have been recognized for their technical sophistication, including the density at which Ocado's bots operate—described as among the densest mobile robotic systems in the world—and the artificial-intelligence software that orchestrates the fleet in real time. And Ocado's storage, retrieval, and fulfillment technology has received industry recognition and awards. By way of example, the Ocado Storage and Retrieval System was named to the 2024 "Top Software & Technology" awards recognized by *Food*

*Logistics* and *Supply & Demand Chain Executive*,[8] and Ocado's technology has separately been recognized in industry indices honoring leaders in emerging technology, data, and sustainability.[9]

### D.    Ocado's Patented Innovations

21.    Ocado's innovative technologies are the product of a large and sustained research, development, and engineering effort. Ocado employs a substantial workforce of engineers—numbering in the thousands—devoted to the design and continual improvement of its robotics, software, and picking technologies.

22.    The innovations described above—Ocado's grid storage system, its robotic load-handling devices and the control systems that orchestrate them, and its automated picking technology—represent significant advances over the prior art and are the result of Ocado's substantial and continuing investment in research and development.    To protect those innovations, Ocado has developed and obtained an extensive portfolio of patents worldwide, comprising hundreds of patents directed to its grid storage systems, robotic load-handling devices, fleet-control software, and automated picking technologies, including the Patents-in-Suit, each of which is owned by Ocado.

23.    The features described above improve the performance of grid-based robotic storage systems and create substantial value for warehouse operators and e-commerce retailers. The Patents-in-Suit disclose and claim inventive systems, methods, and devices directed to these

---

[8] *Top Software & Technology Solutions Award 2024*, FOOD LOGISTICS, https://s3.amazonaws.com/digital.acbusinessmedia.com/FLOG/MISC/FLOG1124_Top-Software-Award%5Bchart%5D.pdf (last visited June 29, 2026) (Ex. 6).

[9] *Technology Leaders Index recognizes innovation pacesetters*, Tech Monitor, https://www.techmonitor.ai/tech-leaders/technology-leaders-index-recognises-innovation-pacesetters?cf-view (last visited June 29, 2026) (Ex. 7).

and related aspects of automated storage and retrieval, including storage-grid architecture, load-handling robots, robotic picking, robot positioning, and the movement of containers within the system. Together, these inventions help warehouse operators meet increasing fulfillment demands with improved speed, accuracy, storage density, and efficiency.

### E.    The '651 Patent

24.    On July 31, 2018, United States Patent No. 10,035,651, entitled "Storage Systems and Methods for Retrieving Units from a Storage System," issued to inventors Lars Sverker Ture Lindbo, Robert Rolf Stadie, Christopher Richard James Brett, and Matthew Robert Whelan. Ocado Innovation Limited is the assignee of all right, title, and interest in and to the '651 Patent, including the right to sue for and recover damages for infringement. A true and correct copy of the '651 Patent is attached to this pleading as Exhibit 8.

25.    The '651 Patent is generally directed to a storage system comprising a frame that holds containers, rails at the top of the frame that are arranged in a grid pattern of two substantially perpendicular sets of rails, and one or more handling devices that move on the rails to carry those containers through the system. The claims of the '651 Patent are directed to, among other things, such a storage system in which a handling device mounted on two sets of wheels—arranged to engage the first and second sets of tracks, respectively—lifts at least one container from a stack in a single operation and moves the container laterally on top of the rails.

26.    Claim 1 of the '651 Patent is set forth below.

> 1.    A storage system comprising: a frame containing a plurality of stacks of containers,
>
> wherein a top of the frame includes rails arranged in a grid pattern, the rails having a first set of parallel tracks and a second set of parallel tracks the second set of tracks being substantially perpendicular to the first set of tracks;

at least one handling device configured for lifting at least one container from a stack in a single operation and moving said container or containers laterally on top of the rails, the handling device including a body mounted on two sets of wheels, a first set of wheels being arranged to engage with at least two tracks of the first set of tracks, a second set of wheels being arranged to engage with at least two tracks of the second set of tracks;

wherein: the body of the handling device includes a substantially centrally located container receiving space, the container receiving space having container lifting means, the lifting means being adapted so as to releasably engage any container to be lifted, the container receiving space being sized so as to retain at least one container therein, said container remaining engaged with the lifting device therein whilst lateral movement of the handling device occurs.

### F.    The '597 Patent

27.    On September 1, 2020, United States Patent No. 10,759,597, entitled "Robotic picking systems and devices," issued to inventors Lars Sverker Ture Lindbo, Andrew John Ingram-Tedd, and Alexander James Badenoch Harvey.  Ocado Innovation Limited is the assignee of all right, title, and interest in and to the '597 Patent, including the right to sue for and recover damages for infringement.  A true and correct copy of the '597 Patent is attached to this pleading as Exhibit 9.  The '597 Patent is in the same family as a European Patent, EP 3374291 ("EP291").[10]

28.    The '597 Patent is generally directed to robotic picking systems and devices that operate on the grid of a containerized storage system. The claims of the '597 Patent are directed to, among other things, a system in which items are stored in bins within a framework having a grid above the bins, robotic devices are disposed on the grid, and at least one picking device picks items from the bins and deposits them directly into delivery containers.

29.    Claim 1 of the '597 Patent is set forth below.

---

[10] A true and correct copy of the EP291 Patent is attached to this pleading as Exhibit 16.

1.      A picking device configured for use on a grid-based storage system, the storage system comprising:

a first set of parallel rails or tracks and a second set of parallel rails or tracks extending substantially perpendicularly to the first set of tracks or rails in a substantially horizontal plane to form a grid pattern having a plurality of grid spaces;

multiple containers located beneath the tracks or rails within a footprint of a single grid space, the picking device adapted to move laterally on rails or tracks above any one of the containers located below the picking device,

wherein the picking device includes picking means configured to pick at least one inventory item from the at least one container located beneath the tracks or rails, means for moving each item from the at least one container to a different predetermined container, and at least one vehicle means, each vehicle means including a vehicle body and a wheel assembly, the wheel assembly comprising a first set of wheels for engaging with the first set of rails or tracks to guide movement of the device in a first direction and a second set of wheels for engaging with the second set of rails or tracks to guide movement of the device in a second direction such that the picking device may be positioned above a predetermined container to pick the item.

### G.      The '302 Patent

30.      On November 10, 2020, United States Patent No. 10,829,302, entitled "Apparatus for retrieving units from a storage system," issued to inventors Lars Sverker Ture Lindbo, Robert Rolf Stadie, Christopher Richard James Brett, and Matthew Robert Whelan.  Ocado Innovation Limited is the assignee of all right, title, and interest in and to the '302 Patent, including the right to sue for and recover damages for infringement.  A true and correct copy of the '302 Patent is attached to this pleading as Exhibit 10.

31.      The '302 Patent is generally directed to a load handling device for lifting and moving containers stacked in a storage system.  The claims of the '302 Patent are directed to, among other things, a load handling device that occupies the footprint of only a single grid space,

-24-

includes a container-receiving space within its body, and is configured to move laterally on rails or tracks above the stacks and to lift a container from a stack into the container-receiving space.

32.    Claim 1 of the '302 Patent is set forth below.

1.    A storage system comprising: a first set of parallel rails or tracks and a second set of parallel rails or tracks extending transverse to the first set in a substantially horizontal plane to form a grid pattern including plural grid spaces; a framework for defining columns beneath the plural grid spaces for retaining plural stacks of containers located beneath the rails, and configured such that each stack will be located within a footprint of a single grid space; and a load handling device configured to move laterally above the columns on the rails, the load handling device including a container-receiving space located above the rails and a lifting device arranged to lift a single container from a respective column into the container-receiving space;

wherein the load handling device includes an external housing that substantially encloses the container receiving space;

wherein the load handling device is configured to move in a first direction along the first set of parallel rails or tracks and in a second direction along the second set of parallel rails or tracks;

wherein the load handling device includes a wheel assembly having a first set of wheels for engaging with the first set of parallel rails or tracks to guide movement of the device in the first direction and a second set of wheels for engaging with the second set of parallel rails or tracks to guide movement of the device in the second direction;

wherein the wheels are arranged around a periphery of the container-receiving space;

and wherein the external housing extends no further than the wheels such that the load handling device has a footprint that occupies only a single grid space in the storage system.

**H.    The '980 Patent**

33.    On March 15, 2022, United States Patent No. 11,273,980, entitled "Method and apparatus for retrieving units from a storage system," issued to inventors Andrew John Ingram-Tedd, Pawel Karolineczak, and Tom Clancy.  Ocado Innovation Limited is the assignee of all

-25-

right, title, and interest in and to the '980 Patent, including the right to sue for and recover damages for infringement. A true and correct copy of the '980 Patent is attached to this pleading as Exhibit 11.

34. The '980 Patent is generally directed to a load handling device, and methods, for retrieving units from a storage system having a grid of two substantially perpendicular sets of tracks. The claims of the '980 Patent are directed to, among other things, a load handling device that includes a wheel mechanism for enabling lateral movement in one of two transverse directions by selectively engaging either a first or a second set of wheels with the corresponding set of tracks and corresponding motors associated with each set of wheels.

35. Claim 1 of the '980 Patent is set forth below.

> 1. A load-handling device for lifting and moving containers stacked in stacks in a storage system, the storage system having a plurality of rails or tracks arranged in grid pattern above the stacks of containers, the grid pattern having a plurality of grid spaces, each stack being located within a footprint of only a single grid space, the load handling device being configured to move laterally on the rails or tracks above the stacks, the load handling device comprising:
>
> a lifting mechanism, the lifting mechanism having a gripper device configured to grip a container from above;
>
> a vehicle body having an upper portion and a lower portion, the upper portion for housing components including power components, and/or control components, and/or drive components and/or lifting components, and the lower portion arranged directly beneath the upper portion, the lower portion having a cavity for accommodating a container and a wheel assembly, the wheel assembly having a first set of wheels, consisting of a pair of wheels on a front of the vehicle body and a pair of wheels on a back of the vehicle body, for engaging with a first set of rails or tracks to guide movement of the device in a first direction and a second set of wheels, consisting of a pair of wheels on each side of the vehicle body, for engaging with a second set of rails or tracks to guide movement of the device in a second direction, wherein the second direction is transverse to the first direction;

the lifting mechanism being configured to raise and lower the gripper device relative to the cavity, the lifting mechanism being located above the cavity; and

the wheel assembly having a wheel positioning mechanism, the wheel positioning mechanism having: means for selectively engaging either the first set of wheels with the first set of rails or tracks or the second set of wheels with the second set of rails or tracks thereby enabling the load handling device to selectively move in either the first or second direction across the grid, and

two motors associated with each of the first and second sets of wheels, wherein a first motor of the two motors is configured to lift or lower two of the wheels of the associated first or second set of wheels and a second motor of the two motors is configured to lift or lower the remaining two of the wheels of the associated first or second set disposed on an opposite side of the load handling device, wherein the two motors associated with the first set of wheels operate to lift or lower the first set of wheels at the same time to control engagement with the first set of rails or tracks; and

the two motors associated with the second set of wheels operate to lift or lower the second set of wheels at the same time to control engagement with the second set of rails or tracks.

## I.    The '574 Patent

36.    On November 1, 2022, United States Patent No. 11,485,574, entitled "Transporting device position determining apparatus and method," issued to inventors Matthew Whelan, David Sharp, and David Brown.  Ocado Innovation Limited is the assignee of all right, title, and interest in and to the '574 Patent, including the right to sue for and recover damages for infringement.  A true and correct copy of the '574 Patent is attached to this pleading as Exhibit 12.

37.    The '574 Patent is generally directed to an apparatus and methods for determining the position of transporting devices that move on a grid-like structure above stacks of containers. The claims of the '574 Patent are directed to, among other things, a control unit that receives information from one or more sensors associated with a transporting device and determines the

device's position to permit operation at higher speeds and accelerations with reduced positional error and reduced spacing between transporting devices.

38.     Claim 13 of the '574 Patent is set forth below.

> 13.     A method of controlling movement of at least one transporting device, the at least one transporting device being arranged to transport containers, the containers being stored in a facility, the facility being arranged to store the containers in a plurality of stacks, the facility having a plurality of pathways arranged in cells so as to form a grid-like structure above the stacks, wherein the grid-like structure extends in a first direction and in a second direction, the at least one transporting device being arranged to operate on rails of the grid-like structure, the method comprising:
>
> receiving information from a first sensor mounted on a first face of the at least one transporting device;
>
> receiving information from a second sensor mounted on a second face of the transporting device, the first face being opposed to the second face;
>
> calculating a position of the first sensor and a position of the second sensor in accordance with the received information; and
>
> calculating a rotation of the at least one transporting device relative to the rails based on the position of the first sensor and the position of the second sensor.

**J.     The '405 Patent**

39.     On November 22, 2022, United States Patent No. 11,505,405, entitled "Picking systems and methods," issued to inventors Lars Sverker Ture Lindbo and Andrew John Ingram-Tedd.  Ocado Innovation Limited is the assignee of all right, title, and interest in and to the '405 Patent, including the right to sue for and recover damages for infringement.  A true and correct copy of the '405 Patent is attached to this pleading as Exhibit 13.  The '405 Patent is in the same family as a European Patent, EP291.

-28-

40.     The '405 Patent is generally directed to picking systems and methods for a containerized storage system.  The claims of the '405 Patent are directed to, among other things, a system in which items are stored in bins within a framework comprising a grid above the bins, robotic devices disposed on the grid transport the containers and pick items from the bins, and picking devices deposit the picked items directly into delivery containers.

41.     Claim 16 of the '405 Patent is set forth below.

> 16.     A combination of a picking system within a storage system, the combination comprising:
>  a first set of parallel rails or tracks and a second set of parallel rails or tracks extending substantially perpendicularly to the first set in a substantially horizontal plane to form a grid pattern with a plurality of grid spaces;
> a set of uprights, the uprights supporting the first and second sets of rails or tracks, the uprights and rails or tracks together defining a framework;
> a robotic load handling device containing at least one delivery container and configured to travel on the first and second sets of rails or tracks;
> a plurality of storage containers located beneath the first and second sets of rails or tracks and within the framework, a portion of the storage containers occupying a space below a grid space; and
> a robotic picking device arranged to operate above the plurality of grid spaces and including picking means disposed above the containers, the picking means being configured to pick at least one inventory item from at least one container of the plurality of storage containers and deposit the inventory item into the at least one delivery container while disposed above the plurality of grid spaces wherein the robotic picking device includes an articulated arm including a portion configured to extend downwardly toward the storage container.

### K.     The '832 Patent

42.     On December 24, 2024, United States Patent No. 12,172,832, entitled "Apparatus for retrieving units from a storage system," issued to inventors Lars Sverker Ture Lindbo, Robert Rolf Stadie, Matthew Robert Whelan, and Christopher Richard James Brett.  Ocado Innovation Limited is the assignee of all right, title, and interest in and to the '832 Patent, including the right

to sue for and recover damages for infringement.  A true and correct copy of the '832 Patent is attached to this pleading as Exhibit 14.

43.     The '832 Patent is generally directed to a load handling device for lifting and moving containers stacked in a storage system, and issued from an application in the same patent family as, and claiming common priority with, the '302 Patent.  The claims of the '832 Patent are directed to, among other things, a load handling device configured to move laterally on rails or tracks above the stacks and to lift a container from a stack into a container-receiving space partly enclosed in the load handling device's housing.

44.     Claim 1 of the '832 Patent is set forth below.

1.     A load handling device comprising:
a housing comprising four lateral surfaces and a top surface that at least partly enclose an inner portion of the housing, the inner portion comprising a container receiving space;

a first plurality of wheels connected to the housing and configured to engage a first set of rails of a grid frame, the first plurality of wheels comprising a first pair of wheels and a second pair of wheels located on an opposite side of the housing from the first pair of wheels, the first plurality of wheels being configured to guide movement of the housing on the first set of rails in a first direction along a top level of the grid frame;

a second plurality of wheels connected to the housing and configured to engage a second set of rails of the grid frame, the second plurality of wheels comprising a third pair of wheels and a fourth pair of wheels, the second plurality of wheels being configured to guide movement of the housing on the second set of rails in a second direction perpendicular to the first direction along the top level; and

a container lifting device positioned in the housing and comprising a container-lift motor configured to lift a container into the container receiving space from a stack of containers within the grid frame beneath the top level,

wherein at least one of the first pair of wheels and at least one of the second pair of wheels are configured to be positioned between

two adjacent rails of the second set of rails with the first pair of wheels and the second pair of wheels positioned on two adjacent rails of the first set of rails,

wherein at least one of the third pair of wheels and at least one of the fourth pair of wheels are configured to be positioned between the two adjacent rails of the first set of rails with the third pair of wheels and the fourth pair of wheels on the two adjacent rails of the second set of rails, and wherein when the container lifting device begins to lift the container from the stack, the first pair of wheels and the second pair of wheels are positioned on the two adjacent rails of the first set of rails, the at least one of the first pair of wheels and the at least one of the second pair of wheels are positioned between the two adjacent rails of the second set of rails, and the third pair of  wheels and the fourth pair of wheels are positioned between the two adjacent rails of the first set of rails.

### L.    The '770 Patent

45.    On August 3, 2021, United States Patent No. 11,079,770 ("the '770 Patent"), entitled "Methods, Systems and Apparatus for Controlling Movement of Transporting Devices," issued to inventors Robert Stadie, Matthew Whelan, and Christopher Brett.   Ocado Innovation Limited is the assignee of all right, title, and interest in and to the '770 Patent, including the right to sue for and recover damages for infringement. A true and correct copy of the '770 Patent is attached as Exhibit 15.

46.    The '770 Patent is generally directed to methods, systems, and an apparatus for controlling the movement of transporting devices on a grid-like structure above stacks of containers.   The claims of the '770 Patent are directed to, among other things, granting a transporting device incremental clearance to traverse portions of its path, with a revised path generated to avoid a potential collision.

47.    The problem facing the inventors of the '770 Patent was the near-simultaneous determination of multiple, high-performance, collision-free paths for hundreds of robots in real time. When the application to which the '770 Patent claims priority was filed in 2014, the

coordinated path planning for a multitude of autonomous vehicles had only recently become the object of serious study. Even then, most work at that time focused on decentralized path planning (such as for an individual autonomous car), not on centralized, high-performance path planning for hundreds of robots or vehicles acting in a coordinated fashion.

48.     The '770 Patent's centralized system for controlling robot movement includes a processor or processors, connected to a memory unit and other computing structures, configured (including through software) to determine a set of potential pathways for a robot to travel from one point to another on the grid, such that the pathways do not overlap the pathways previously determined for other robots. The ability of the invention claimed in the '770 Patent to determine non-conflicting paths through upfront processing and preplanning in this way substantially reduces the possibility of robot collisions in highly dense systems. As a result, the performance of the system is increased because other, less efficient collision avoidance systems are invoked much more rarely. This is set out in independent claims 1 and 29 of the '770 Patent. The configuration of processors to perform these tasks was unconventional and not well understood at the time of the invention claimed in the '770 Patent. Control systems did not determine non-conflicting routes that took into account the previously determined paths for each of the other robots in the system.

49.     In the invention claimed in the '770 Patent, the processors are also configured to predict, based on the robots' actual behavior as reported to the control system, the potential for collisions with other robots that may arise as the robot travels on a previously determined pathway. The processors are further configured to generate clearance commands allowing the robot to continue to travel along the pathway if no collision is predicted. If a collision is predicted, clearance to traverse the previously determined path is denied and a new path can be

planned and reserved "dynamically"—at the time clearance is refused—for the non-cleared robot. This is also set out in, for example, independent claims 1 and 29 of the '770 Patent. This, likewise, was not a feature of prior systems, which simply commanded the robot to turn or stop to avoid a potential collision.

50.     Humans simply cannot carry out the movement planning and path optimization processes necessary to provide collision-free paths as the robots carry out their assigned tasks at the speeds required to coordinate hundreds of robots simultaneously and in real time. Moreover, the system claimed in the '770 Patent is inextricably tied to the management of *robots*, which requires the controller to have capabilities humans do not have, including the ability to receive electronic status reports from the robots, to electronically track the location and movement of each robot, and to communicate electronically with the robots to provide predetermined paths and clearance commands.

51.     The '770 Patent also teaches and claims advantageous ways in which the processors are configured to carry out these tasks, and to interact and operate in conjunction with the other components of the claimed system, including other structures in the controller, as well as the robots, the storage grid, and the storage containers. For example, as set out in the claims, the system includes a memory device for storing clearance instructions, which it may use and connect with others components of the system, like the system clock, which allows it to reserve clearance instructions to be sent at a future time. The processors may be configured to determine pathways using, among others, optimization algorithms and/or robot physics models. They may be configured to generate clearance commands for a predefined period of time if no collision is predicted, or, if a collision is predicted, to commence route re-planning based on (among other things) status reports or measurements provided by the robots (taking into account the

dimensions of the grid). The '770 Patent also teaches and claims numerous other optional and advantageous variations, which optimize the performance of busy robots as they quickly move around the storage grid to store, retrieve, move, and deliver items for customer orders.

52.     The claims of the '770 Patent are not directed to an abstract idea. Instead, they recite a specific improvement to grid-style automated storage control system technology that improves system performance by allowing robots to move dynamically and with fewer collisions.

53.     Because the claims of the '770 Patent are limited to the context of robots operating in a grid-style bin storage systems, there is no risk that the patent will preempt the idea of vehicle routing or traffic planning and collision avoidance in all fields.

54.     Claim 1 of the '770 Patent is set forth below.

> 1.     A system for controlling movement of at least one transporting device arranged to transport at least one container, the system comprising:
>
> one or more processors configured to: determine a plurality of paths for a plurality of transporting devices to travel on pathways of a facility so that no two of the plurality of transporting devices have locations while traveling along the plurality of paths that would cause the plurality of transporting devices to overlap at a same time, the plurality of paths comprising a first path for traveling by a first transporting device of the plurality of transporting devices and a second path for traveling by a second transporting device of the plurality of transporting devices,
>
> wherein the pathways form a grid-like structure above a plurality of containers arranged within the facility,
>
> the pathways comprising a first set of parallel rails extending in a first direction and a second set of parallel rails extending in a second direction transverse to the first direction in a substantially horizontal plane,
>
> at least some of the plurality of containers being stored in stacks,

-34-

wherein the plurality of transporting devices are configured to selectively move laterally in the first direction and the second direction on the pathways,

at least some of the plurality of transporting devices being configured to transport the plurality of containers,

generate a plurality of clearance commands for the plurality of transporting devices to cause the plurality of transporting devices to travel on the pathways along portions of the plurality of paths, the plurality of clearance commands comprising a first clearance command for the first transporting device,

determine there is a potential for a collision between the first transporting device traveling along the first path and the second transporting device traveling along the second path, and

responsive to a determination that there is the potential for the collision: withhold a second clearance command for the first transporting device that would cause the first transporting device to travel on the pathways along a portion of the first path,

determine a revised path different from the first path for the first transporting device to travel on the pathways, and

generate a third clearance command for the first transporting device to cause the first transporting device to travel on the pathways along a portion of the revised path; and

a memory device configured to store the plurality of clearance commands and the third clearance command.

**BRIGHTPICK'S INFRINGEMENT**

55.     Brightpick has U.S. headquarters in Austin, Texas.  Brightpick has offered to sell, sold, used, made, distributed, or imported into the United States the Gridpicker system and robots since at least April 2026.  Brightpick also tests its system and software in the United States.  In addition, Brightpick provides technical support, instructions, and guidance on how to use its Gridpicker system to customers in the United States, including by serving as a "reliable service partner" and providing "Remote support 24/7/365" and "Optional on-site support."[11]  Brightpick also installs the Gridpicker system for its U.S. customers.[12]

56.     Additionally, Brightpick's job listings reflect its employees' active involvement in training its customers.  For example, Brightpick's website listed a job opening for a "Robotics Field Technician" who would "be a resource for automation commissioning . . . and client training."[13]  This job posting stated that the job's "Location" is "US" and that its "Core responsibilities" include "Client Obsession . . . ensure smooth operation of the Brightpick solution on-site," "Training . . . Deliver in-person training to end-users at client installations," and "demonstrating the system for potential clients at our HQ or at trade shows."[14]

---

[11] *Gridpicker*, BRIGHTPICK, https://brightpick.ai/gridpicker/ (last visited June 30, 2026) (Ex. 17); *Solutions and Pricing*, BRIGHTPICK, https://brightpick.ai/pricing/ (last visited June 30, 2026) (Ex. 18).

[12] *See Frequently Asked Questions*, BRIGHTPICK, https://brightpick.ai/faq/ (last visited June 30, 2026) ("Brightpick has a dedicated installation team.  We do not outsource to third parties.") (Ex. 19).

[13] *Current Open Positions: Robotics Field Technician [York, PA 17401]*, BRIGHTPICK, https://brightpick.ai/careers/?r=detail&id=200211206&impressionId=efa8d166-cc89-43d1-bdc2-9193f44b2089#openpositions (last visited June 30, 2026) (Ex. 20).

[14] *Id.*

57.    As explained in more detail below, Brightpick's Gridpicker system, robots, and Intuition control software infringe the Patents-in-Suit.

58.    The grid of Brightpick's Gridpicker system has two principal components:  (i) a frame that defines and supports the storage structure, and (ii) storage containers/bins that are stored within the frame beneath the grid, as shown below.[15]



---

[15] *Gridpicker* (Ex. 17).

59.    The frame of Brightpick's Gridpicker system is the structural system that features a grid on its top level and houses containers below.[16]   The frame has two principal sub-components:  (i) two sets of rails arranged in a grid pattern at the top of the frame, and (ii) a set of vertical uprights that extend downward from the rails.[17]   Together, the rails and uprights form the structural framework in which containers/bins are housed, as shown below.[18]



---

[16] *Gridpicker* (Ex. 17).

[17] *Id.*

[18] BRIGHTPICK, *The story behind Gridpicker: the fastest warehouse robot ever created*, at 1:02 (YouTube, Mar. 20, 2026), https://www.youtube.com/watch?v=NL51ROK5CKI.

60.    The frame includes a set of vertical uprights.  The uprights extend from the floor of the storage area up to the rails that form the grid on which robots travel, and uprights are the load-bearing members of Gridpicker's modular design.  Each upright spans the full vertical height of the container stacks.[19]



61.    The top of the Gridpicker frame includes rails arranged in a grid pattern.  The grid pattern is formed by two sets of parallel rails or tracks that run perpendicularly to one another.[20]



---

[19] BRIGHTPICK, *Introducing Gridpicker: the fastest warehouse robot ever created*, at 0:13 (YouTube, Mar. 17, 2026), https://www.youtube.com/watch?v=D4KM2DuLx5A.

[20] BRIGHTPICK, *World's fastest warehouse robots*, at 0:11, (YouTube, Mar. 17, 2026), https://www.youtube.com/watch?v=KpdYF3Owevo.

62.     As shown below, one set of parallel rails or tracks extends substantially perpendicularly to another set, and together the two sets form multiple grid spaces above the storage area.[21]



63.     The parallel rails are positioned on top of the frame.   The rails lie in a substantially horizontal plane, and the Gridpicker robot travels across the grid by engaging its wheels with the rails.



---

[21] BRIGHTPICK, *The story behind Gridpicker: the fastest warehouse robot ever created*, at 0:56 (YouTube, Mar. 20, 2026), https://www.youtube.com/watch?v=NL51ROK5CKI.

64.    Brightpick's Gridpicker uses a plurality of containers/bins, which Brightpick refers to as "totes."[22]  Brightpick describes Gridpicker as a system in which robots "pick items directly from storage totes on the grid."[23]



65.    As shown below, the containers are housed within the frame, beneath the rails of the grid.[24]  They are stacked directly above one another.



---

[22] *Gridpicker* (Ex. 17).

[23] *Id.*

[24] BRIGHTPICK, *World's fastest warehouse* robots, at 0:11, (YouTube, Mar. 17, 2026) https://www.youtube.com/watch?v=KpdYF3Owevo.

66.     The same physical tote, or container, can serve different functions within the system depending on where it is located and how it is being used.  For example, a tote can function as a storage container by holding inventory beneath the rails in vertical columns.  The same tote can function as a delivery container when it is carried by a Gridpicker robot to receive items picked for a customer order or to be transported for downstream fulfillment.[25]

**Totes held by robot:**              **Totes within storage grid:**

     

67.     As shown above, the totes held by a Gridpicker robot are physically identical, in appearance and dimension, to the totes stored beneath the rails.[26]

---

[25] BRIGHTPICK, *Brightpick Gridpicker*, at 0:04 (YouTube, May 14, 2026), https://www.youtube.com/watch?v=VLjNc18OyDE.

[26] *See* BRIGHTPICK, *Brightpick Gridpicker*, at 0:04 (YouTube, May 14, 2026), https://www.youtube.com/watch?v=VLjNc18OyDE.

68.      Brightpick's "Order Buffer" workflow shows that the same tote moves freely between the two roles.  After the robot picks items into a tote, the robot can deposit that tote back into the storage shelving for later retrieval and dispatch.[27]



69.      Brightpick describes a "Completed Orders" workflow in which the tote, holding the items for an order, is moved by the robot to an area for packing, shipping, or dispatch.[28]



---

[27] *Gridpicker*, BRIGHTPICK, https://brightpick.ai/gridpicker/ (last visited June 30, 2026) (click "Order Buffer").

[28] *Id.* (click "Completed Orders").

70.     When they are stored in the system, each vertical column of containers is located within the footprint of a single grid space formed by the intersecting rails atop the grid.[29] Brightpick markets this arrangement as achieving "cube-level storage density."[30]



71.     Brightpick describes its Gridpicker robots as "travel[ing] above shelves on a fixed aluminum grid structure and pick[ing] directly from storage totes sitting on top."[31]

---

[29] BRIGHTPICK, *Introducing Gridpicker: the fastest warehouse robot ever created*, at 0:08, 0:13 (YouTube, Mar. 17, 2026), https://www.youtube.com/watch?v=D4KM2DuLx5A.

[30] *Most Commonly Asked Questions About Gridpicker* (Ex. 1).



72.    As shown below, the Gridpicker robot has two principal vertical portions:  (i) a lower vehicle portion that sits on the rails, and (ii) an upper vehicle portion that sits above the lower portion.[32]



---

[31] *Brightpick Launches Gridpicker; Highest-Throughput Robotic Fulfillment System Ever Developed*, BRIGHTPICK, https://brightpick.ai/brightpick-launches-gridpicker/ (last visited June 29, 2026) (Ex. 21).

[32] BRIGHTPICK, *Introducing Gridpicker: the fastest warehouse robot ever created*, at 0:04 (YouTube, Mar. 17, 2026), https://www.youtube.com/watch?v=D4KM2DuLx5A.

73.    As shown below, the lower portion of the Gridpicker robot is a wheeled chassis that sits on top of the grid's rails.[33]    The lower portion houses (i) the wheel assembly that engages the two perpendicular sets of rails and (ii) the cavity where containers are held.[34]



74.    The lower vehicle portion is mounted on two sets of wheels arranged to engage the grid's two perpendicular sets of rails.[35]    Each set has four wheels:  two on one side of the chassis and two on the opposite side.[36]    The wheels are arranged around the chassis periphery.[37]



---

[33] BRIGHTPICK, *Introducing Gridpicker: the fastest warehouse robot ever created*, at 0:04 (YouTube, Mar. 17, 2026), https://www.youtube.com/watch?v=D4KM2DuLx5A.

[34] *Id.*

[35] *Id.*

[36] *Id.*

[37] *Id.*

75.     The first set of wheels engages the first set of parallel rails and guides the robot's movement in a first direction across the grid.[38]    That first direction corresponds to the X direction on the grid shown below.[39]



---

[38] *Gridpicker*, BRIGHTPICK, https://brightpick.ai/gridpicker/ (last visited June 29, 2026) (click "Putaway").

[39] *Id.*

76.    The second set of wheels engages the second set of parallel rails and guides the robot's movement in a second direction perpendicular to the first direction.[40]    That second direction corresponds to the Y direction shown below in Brightpick's videos of the Gridpicker robot in motion.[41]



---

77.     Using the two sets of wheels (4 wheels in the X-direction and 4 wheels in the Y-direction), the Gridpicker robot is capable of moving in two orthogonal directions and can reach any grid space on the grid.[42]

**Gridpicker robot traveling on the first set of rails in a first direction (X)[43]**

| 0:05 | 0:08 |



**Gridpicker robot traveling on the second set of rails in a second direction (Y)[44]**

| 0:07 | 0:08 |



---

[42] BRIGHTPICK, *World's fastest warehouse robots*, at 0:01-0:08 (YouTube, Mar. 17, 2026), https://www.youtube.com/watch?v=KpdYF3Owevo.

[43] BRIGHTPICK, *World's fastest warehouse robots*, at 0:05-0:08 (YouTube, Mar. 17, 2026), https://www.youtube.com/watch?v=KpdYF3Owevo.

[44] BRIGHTPICK, *World's fastest warehouse robots*, at 0:07-0:08 (YouTube, Mar. 17, 2026), https://www.youtube.com/watch?v=KpdYF3Owevo.

78.     To switch between the X and Y directions on the grid, the Gridpicker robot uses a wheel-positioning mechanism that raises or lowers one or both wheel sets so that only the wheel set corresponding to the intended direction of travel engages the rails.  As shown below, a video from March 20, 2026 that introduced the Gridpicker system depicts a robot whose side wheels are engaged with the rails atop the grid frame and then whose front wheels are engaged with the rails atop the grid frame (after the side wheels are raised).[45]





79.     The lower vehicle portion of the Gridpicker robot also includes a cavity.[46]  The cavity is the open interior space within the lower portion of the robot's body, and the cavity is located just below the container lifting mechanism.[47]  It is the area that the containers occupy when they are held by the Gridpicker robot.

---

[45] BRIGHTPICK, *The story behind Gridpicker: the fastest warehouse robot ever created*, at 1:25-1:30 (YouTube, Mar. 20, 2026), https://www.youtube.com/watch?v=NL51ROK5CKI.

[46] *See Gridpicker*, BRIGHTPICK, https://brightpick.ai/gridpicker/ (last visited June 29, 2026) (click "Putaway") (demonstrating a Gridpicker bot filling its empty cavity with two totes).

[47] BRIGHTPICK, *The story behind Gridpicker: the fastest warehouse robot ever created*, at 0:03, 1:25-1:30 (YouTube, Mar. 20, 2026), https://www.youtube.com/watch?v=NL51ROK5CKI.



80.     The upper vehicle portion of the Gridpicker robot is the portion of the body that sits above the wheeled chassis.  The upper portion includes (i) the container lifting mechanism and (ii) the power and control components that operate the Gridpicker robot.[48]

---

[48] BRIGHTPICK, *World's fastest warehouse robots*, at 0:00 (YouTube, Mar. 17, 2026), https://www.youtube.com/watch?v=KpdYF3Owevo; *see AI and Software*, BRIGHTPICK, https://brightpick.ai/ai-and-software/ (last visited June 29, 2026) (Ex. 22).



81.    The Gridpicker robot includes a white rectangular lifting apparatus that extends outward from the robot body and over a container storage location.[49]  The apparatus is positioned and affixed above the cavity where containers are retained during operation.



---

[49] *Gridpicker*, BRIGHTPICK, https://brightpick.ai/gridpicker/ (last visited June 29, 2026) (click "Putaway").

82.     The lifting apparatus has substantially the same footprint as the top of a container and includes upper and lower rectangular frames connected by extendable vertical members.  The lower rectangular frame functions as a gripper device because it is configured to engage the container around the container's upper lip, so that the container can be lifted and moved.[50]



---

[50] BRIGHTPICK, *The story behind Gridpicker: the fastest warehouse robot ever created*, at 1:25-1:30 (YouTube, Mar. 20, 2026), https://www.youtube.com/watch?v=NL51ROK5CKI.

83.    During operation, the lower rectangular frame lowers toward a container, engages the container from above, retracts upward to lift the container above the rails, and withdraws the container into the robot's cavity. In doing so, the lifting mechanism raises and lowers the gripper device relative to the cavity.  The gripper device moves downward toward the container and then upward toward the cavity after engaging the container.[51]



[51] BRIGHTPICK, *The story behind Gridpicker: the fastest warehouse robot ever created*, at 1:25-1:30 (YouTube, Mar. 20, 2026), https://www.youtube.com/watch?v=NL51ROK5CKI.

84.     Based on the publicly available images and descriptions, Ocado reasonably believes that the upper vehicle portion of the Gridpicker robot houses power components and control components used to operate the robot.[52]  The Gridpicker robot is an autonomous mobile robot that travels on the rails, lifts and carries containers, and operates a robotic picking arm. Those functions require onboard power components.



85.     The Gridpicker robot also includes control components.  Brightpick describes its robots as being powered by Intuition, which Brightpick calls the "digital brain" of the warehouse.[53]  The Gridpicker robot therefore includes control components that receive instructions from Intuition, communicate with the fleet-control software, and control the robot's movement, lifting mechanism, sensors, and picking arm during operation.  Ocado reasonably

---

[52] BRIGHTPICK, *World's fastest warehouse robots*, at 0:00 (YouTube, Mar. 17, 2026), https://www.youtube.com/watch?v=KpdYF3Owevo; *see AI and Software* (Ex. 22).

[53] *AI and Software* (Ex. 22).

believes that at least some of these power and control components are housed in the upper vehicle portion of the Gridpicker robot.

86.    The Gridpicker robot also has a container-receiving space.[54]    The container-receiving space extends through both the lower vehicle portion and the upper vehicle portion of the Gridpicker robot.[55]



87.    As shown above, the container-receiving space is substantially located centrally within the robot body relative to the outside walls and the side paneling of the external housing.[56]

88.    The container-receiving space is sized to receive and retain at least one container.[57]  Brightpick has stated that each Gridpicker robot "[c]arr[ies] two order totes at once

---

[54] BRIGHTPICK, *The story behind Gridpicker: the fastest warehouse robot ever created*, at 0:03, 1:25-1:30 (YouTube, Mar. 20, 2026), https://www.youtube.com/watch?v=NL51ROK5CKI.

[55] BRIGHTPICK, *The story behind Gridpicker: the fastest warehouse robot ever created*, at 0:03 (YouTube, Mar. 20, 2026), https://www.youtube.com/watch?v=NL51ROK5CKI.

[56] BRIGHTPICK, *The story behind Gridpicker: the fastest warehouse robot ever created*, at 0:03, 1:25-1:30 (YouTube, Mar. 20, 2026), https://www.youtube.com/watch?v=NL51ROK5CKI.

to further increase productivity," and publicly available Gridpicker materials show the space holding two containers simultaneously.[58]

89.     Once a container is lifted into the container-receiving space, the container remains engaged with the lifting apparatus and retained within the robot while the robot moves laterally across the grid.[59]   That engagement allows the robot to perform Brightpick's "Storage," "Putaway," "Order Buffer," and "Goods-to-Person Picking" workflows.[60]

90.     The Gridpicker robot includes a picking arm mounted on the body of the robot.[61] The arm travels on a vertical guide that runs along the body of the robot, as shown below.[62]

---

[57] *Gridpicker*, BRIGHTPICK, https://brightpick.ai/gridpicker/ (last visited June 10, 2026) (click "Putaway").

[58] *Brightpick Launches Gridpicker* (Ex. 21).

[59] BRIGHTPICK, *World's fastest warehouse robots*, at 0:07-0:08 (YouTube, Mar. 17, 2026), https://www.youtube.com/watch?v=KpdYF3Owevo (demonstrating Gridpicker robot's movement across the grid while holding containers).

[60] *Gridpicker* (Ex. 17).

[61] *Id.*

[62] BRIGHTPICK, *Brightpick Gridpicker*, 0:15 (YouTube, May 14, 2026), https://www.youtube.com/watch?v=VLjNc18OyDE.






91.     Brightpick markets the Gridpicker's "On-grid Robot Picking" function, in which the robot moves on top of the storage grid and uses its picking arm to pick items directly from storage containers located beneath the rails.[63]

92.     The Gridpicker robot's picking arm is articulated and includes a portion that extends downward toward a container during the pick operation.[64]   During picking, the arm descends along the vertical guide on the body of the Robot, reaches into the storage container located beneath the rails, and engages an inventory item.[65]



---

[63] *Gridpicker* (Ex. 17).

[64] BRIGHTPICK, *Brightpick Gridpicker*, 0:15 (YouTube, May 14, 2026), https://www.youtube.com/watch?v=VLjNc18OyDE.

[65] BRIGHTPICK, *World's fastest warehouse robots*, at 0:24-0:29 (YouTube, Mar. 17, 2026), https://www.youtube.com/watch?v=KpdYF3Owevo; BRIGHTPICK, *Brightpick Gridpicker*, 0:15 (YouTube, May 14, 2026), https://www.youtube.com/watch?v=VLjNc18OyDE.

93.    Ocado reasonably believes the picking arm uses a suction-based end effector to engage and lift individual inventory items.[66]  Once an item is engaged, the picking arm lifts upward from below the grid and deposits the item into a container held within the robot's container-receiving space.[67]

94.    Through the combination of the wheeled chassis, the lifting mechanism, the container-receiving space, and the picking arm, the Gridpicker robot combines load-handling and item-picking functionality.[68]  The Robot can move laterally across the grid, position itself above a predetermined storage container, pick items from that container using the picking arm, and deposit those items into a separate container retained in its container-receiving space.[69]

95.    The Gridpicker robot includes a location-determining mechanism that uses onboard sensors to determine the robot's position and orientation as it travels on the Grid. Brightpick states that its robots navigate using "SLAM (Simultaneous Localization and Mapping)" and AI-based navigation and that they rely on LiDAR and 3D vision to "sense and map their surroundings."[70]

---

[66] BRIGHTPICK, *Brightpick Gridpicker* (YouTube, May 14, 2026), https://www.youtube.com/watch?v=VLjNc18OyDE; *see Brightpick Unveils New Details About the World-Class Machine Vision and AI Behind Its Versatile Brightpick Autopickers*, BRIGHTPICK (Dec. 12, 2023), https://brightpick.ai/brightpick-unveils-new-details-about-the-ai/ ("The robotic arm on Brightpick Autopicker picks items using suction cups . . . .") (Ex. 23); *Brightpick Launches Gridpicker* (Ex. 21).

[67] BRIGHTPICK, *World's fastest warehouse robots*, at 0:25-0:29 (YouTube, Mar. 17, 2026), https://www.youtube.com/watch?v=KpdYF3Owevo.

[68] *Gridpicker* (Ex. 17).

[69] *Id.*

[70] *AI and Software* (Ex. 22).

96.     Brightpick further states that each robot has enhanced spatial awareness and real-time perception that enable it to respond to dynamic warehouse conditions.[71]   This navigation and localization functionality requires the Gridpicker robot to receive information from sensors mounted on the robot, including at least a first sensor mounted on a first face of the robot and a second sensor mounted on a second face of the robot opposed to the first face.

97.     On information and belief, the Gridpicker robot's control system calculates the position of each such sensor based on the information received from the sensors and uses those sensor positions to calculate the robot's position and its rotation relative to the rails of the grid. Because the Gridpicker robot travels on a rail-based grid, accurate movement requires the system to determine the robot's orientation relative to the rails.   On information and belief, by comparing the positions determined from sensors on opposed faces of the robot, the system can determine whether one side of the robot is advanced relative to the other and thereby calculate the robot's rotation.

98.     Brightpick's Gridpicker system is controlled by Brightpick's Intuition software.[72] Brightpick describes Intuition as the "digital brain" of the warehouse that "orchestrates [the] entire robot fleet with precision, controlling every movement and fulfillment workflow."[73]

99.     Brightpick's Intuition software creates a "real-time digital twin" of the warehouse and provides live visibility into the location and activity of each robot, further indicating that the system calculates and tracks each robot's position information as the robots travel on the grid.[74]

---

[71] *Id.*

[72] *Brightpick Launches Gridpicker*, BRIGHTPICK, https://brightpick.ai/brightpick-launches-gridpicker/ (last visited June 29, 2026) ("Gridpicker embodies the same . . . software stack, and embodied AI models as Autopicker . . . . At its core is Brightpick Intuition, the company's AI-powered orchestration software that acts as the digital brain of the warehouse.") (Ex. 21).

[73] *AI and Software* (Ex. 22).

100.    Intuition runs on one or more processors and integrates with a customer's warehouse-management or enterprise-resource-planning system.[75]    Brightpick states that Intuition controls the movement of multiple Gridpicker robots as they travel on the grid and manages fulfillment workflows across the warehouse.[76]

101.    Intuition uses a "Time-Space Planning" algorithm to plan and coordinate robot movement.[77]  Brightpick has stated that the algorithm "plans the paths of the [robots] in a way that ensures they do not cross each other"[78] and "calculates the most optimal path not only to minimize travel distance, but also to avoid slowing down other robots or creating congestion."[79]

102.    Intuition determines the paths along which multiple robots travel on the grid so that no two robots have positions that would cause them to overlap at the same time.[80] Brightpick has stated that the system "negotiate[s] conflicts where two robots want to be in the

---

[74] *Id.*

[75] *Meet Brightpick Intuition, the Software Brain Behind Our Robots*, BRIGHTPICK, https://brightpick.ai/resources/meet-brightpick-intuition-the-software-brain-behind-our-robots/ (last visited June 29, 2026) (Ex. 24).

[76] *Id.*

[77] *Id.*

[78] Rachel Pasini, *Brightpick explains machine vision and AI in intelligent warehouse automation*, DESIGN WORLD (Dec. 14, 2023), https://www.designworldonline.com/brightpick-explains-machine-vision-and-ai-in-intelligent-warehouse-automation/ (Ex. 25).

[79] *Meet Brightpick Intuition* (Ex. 24).

[80] *Id.*

same place at the same time"[81] and "ensures that one robot 'gives way' to allow a higher-priority robot to pass."[82]

103.   Intuition re-plans paths in real time.[83]  Brightpick has stated that "[r]eal-time re-planning ensures uninterrupted operations even if something unexpectedly changes while the robot is already traveling,"[84] and that "[o]n average it takes only a few seconds to re-plan the entire robot fleet if something unexpected disrupts the precisely planned workflows (for example, if a human needs to walk into a robot's path)."[85]

104.   Intuition tracks robot activity and provides a live view of warehouse operations.[86] Brightpick states that Intuition tracks the exact location, quantity, and batch of every SKU and provides real-time visibility into the warehouse.[87]  On information and belief, Intuition receives information from robot-mounted sensors, calculates the position and orientation of each Robot, and uses that information to control robot movement on the grid.[88]

---

[81] Mike Oitzman, *Brightpick CEO Jan Zizka Discusses Development of Robot-to-Goods System*, THE ROBOT REPORT (Dec. 6, 2023), https://www.therobotreport.com/brightpick-ceo-jan-zizka-discusses-development-of-robot-to-goods-system/ (Ex. 26).

[82] *Brightpick explains machine vision and AI in intelligent warehouse automation* (Ex. 25).

[83] *Meet Brightpick Intuition* (Ex. 24).

[84] *Id.*

[85] *Brightpick explains machine vision and AI in intelligent warehouse automation* (Ex. 25).

[86] *AI and Software* (Ex. 22).

[87] *Id.*

[88] *Id.*

## BRIGHTPICK HAS WILLFULLY INFRINGED AND CONTINUES TO WILLFULLY INFRINGE THE ASSERTED PATENTS

105.    Brightpick has been aware of Ocado and its status as "one of the earliest pioneers in e-Grocery" since at least July 22, 2024.[89]

106.    On March 17, 2026, Brightpick announced the worldwide launch of its Gridpicker robotic fulfillment system, which is described above in detail.  Also on March 17, 2026, Brightpick announced that the first live reveal of Gridpicker would occur at the LogiMAT trade fair in Stuttgart, Germany at 1:00 PM on March 24, 2026.

107.    Ocado and its German counsel then comprehensively analyzed Brightpick's materials describing Gridpicker and concluded that Gridpicker infringed Ocado's EP291.

108.    On March 23, 2026, Ocado's German counsel sent a letter to Brightpick.  The letter alerted Brightpick to Gridpicker's infringement of EP291, included a claim chart, requested that Brightpick confirm it would cease and desist its infringement, and enclosed a cease-and-desist declaration for Brightpick's signature.[90]  Ocado's March 23 letter stated that if Brightpick did not sign a timely cease-and-desist declaration, Ocado reserved the right to immediately seek injunctive relief.

109.    Brightpick did not respond by the deadline.  Later that afternoon, Ocado applied to the Regional Court of Düsseldorf for an interim injunction.  (Dkt. No. 1, Ex. 3.)  Ocado's application reflected the substance of the letter it had sent to Brightpick.

110.    The next day, March 24, 2026, the Regional Court of Düsseldorf acknowledged the merits of Ocado's infringement claim, enjoining Brightpick from infringing EP291 on an

---

[89] BRIGHTPICK, *How to Win in E-Grocery – Vineta Bajaj (CFO, Rohlik Group, ex-Ocado) | Beyond the Pick*, at 1:20-1:25 (YouTube, July 22, 2024), https://www.youtube.com/watch?v=kR0M15-HVFM.

[90] E-mail from Ocado to Brightpick (Mar. 23, 2026, at 00:49) (Ex. 27).

interim basis. Following an *inter partes* hearing, the Regional Court of Düsseldorf entered judgment on June 18, 2026, maintaining the injunction as to Claim 14 of EP291 and declaring Brightpick responsible for 80% of the costs of the proceedings. The option to appeal this decision currently remains open to Brightpick.

111.  Despite being aware of the injunction and having received Ocado's letter, Brightpick proceeded to demonstrate its Gridpicker system at the LogiMAT trade show. Ocado called the local police, and after they arrived at the trade show, Brightpick initially appeared to comply. However, the next day, the trade show security team noticed that Brightpick continued to present and demonstrate its Gridpicker system. It was only after the security team sought the assistance of the local police that Brightpick ceased its demonstration. The Regional Court of Düsseldorf is currently considering whether Brightpick was in breach of the injunction.

112.  After LogiMAT, Brightpick again sought to demonstrate and offer for sale the Gridpicker system, this time at the MODEX 2026 trade show in Atlanta, Georgia. After Ocado learned that Brightpick sought to display Gridpicker at MODEX 2026, Ocado sent a letter to Brightpick on April 9, 2026, explaining that Gridpicker appeared to practice one or more claims of the '651, '597, '302, '980, '574, '405, and '832 Patents (of which the '597 and '405 are U.S. counterparts to EP291) and attaching copies of those seven patents.[91]

113.  Brightpick thus learned of the '651, '597, '302, '980, '574, '405, and '832 Patents, and its infringement of those patents, no later than April 9, 2026.

114.  Ocado's U.S. letter stated that Ocado remained open to a good-faith discussion regarding a potential commercial resolution.[92] Only one business day after receiving Ocado's

---

[91] Letter from Ocado to Brightpick (Apr. 9, 2026) (Ex. 28).

[92] *Id.* at 3.

letter, Brightpick filed this lawsuit, seeking a declaratory judgment of non-infringement for the seven patents identified in Ocado's letter. Based on the timing of that filing, along with Brightpick's awareness of Ocado as a competitor in the automated storage and retrieval market, Ocado reasonably believes that Brightpick (1) knew of at least the '651, '597, '302, '980, '574, '405, and '832 Patents, (2) knew of Brightpick's infringement of those patents, substantially before Ocado's April 9, 2026 letter, and (3) anticipated U.S. litigation over its infringement and preemptively prepared a declaratory judgment action to avoid being sued in its home venue in Texas.

115.    Despite undisputable knowledge of at least the '651, '597, '302, '980, '574, '405, and '832 Patents and its infringement of them, Brightpick presented, displayed, demonstrated, sold, and/or offered Gridpicker for sale in the U.S. at MODEX 2026, which began on April 13, 2026, after Brightpick had received Ocado's letter and filed this lawsuit.

116.    In light of the history between the parties, Brightpick's awareness of Ocado as a competitor in the automated storage and retrieval market, Brightpick's pre-existing knowledge of the '651, '597, '302, '980, '574, '405, and '832 Patents, the EP291 Patent, and its infringement of those Patents, and Brightpick's swift assembly of a declaratory judgment complaint, Ocado reasonably believes that Brightpick has also had knowledge of the '770 Patent and that it infringes or likely infringes the '770 Patent since no later than Ocado's April 9, 2026 letter and likely substantially earlier. Despite that knowledge, Brightpick has continued its infringement of the '770 Patent. At a minimum, Brightpick has been at least willfully blind to the existence of the '770 Patent because it was at least aware of a high probability that Ocado had additional relevant patents in its portfolio and, if Brightpick did not know of the '770 Patent, Brightpick intentionally avoided learning of it despite the high likelihood that it existed.

117. Brightpick has thus knowingly and willfully infringed the Patents-in-Suit, and unless enjoined by this Court, will continue to do so.

**FIRST COUNT**
**PATENT INFRINGEMENT**
**'651 PATENT 35 U.S.C. §§ 271 AND 281**

118. Ocado incorporates and repeats all the above and below allegations by reference.

119. Brightpick has directly infringed one or more claims of the '651 Patent pursuant to 35 U.S.C. §§ 271(a) and 154(d)(1)(A)(i), either literally or under the doctrine of equivalents, by making, using, importing, selling, distributing, and/or offering to sell Gridpicker robots and the Gridpicker system in the United States. Brightpick's infringement is ongoing.  Attached and incorporated herein as Exhibit 29 is a claim chart demonstrating how the Gridpicker system and its robots meet all limitations of at least claim 1 of the '651 Patent.

120. Brightpick has had knowledge of the '651 Patent since at least April 9, 2026, when Ocado's U.S. counsel notified Brightpick of its infringement.

121. Brightpick also has indirectly infringed one or more claims of the '651 Patent pursuant to 35 U.S.C. § 271(b) by actively inducing others (including, but not limited to, its business partners and customers) to infringe the '651 Patent, by, among other things, providing instructions, manuals, technical assistance, training, and promotional materials relating to the installation, use, operation, and maintenance of Gridpicker robots and the Gridpicker system in the United States.  Brightpick's inducement is ongoing.

122. Brightpick also has contributed to the infringement of one or more claims of the '651 Patent pursuant to 35 U.S.C. § 271(c) by selling, offering to sell, or importing into the United States products, including the Gridpicker grid components and/or the robots used atop the Gridpicker storage grid, that constitute a material part of the '651 Patent's invention, that are especially made for infringing, or especially adapted for use in infringement of, the '651 Patent.

Such products, including the robots used atop the Gridpicker storage grid, are not staple articles of commerce suitable for non-infringing use. Brightpick's contributory infringement is ongoing.

## SECOND COUNT
## PATENT INFRINGEMENT
## '597 PATENT 35 U.S.C. §§ 271 AND 281

123.    Ocado incorporates and repeats all the above and below allegations by reference.

124.    Brightpick has directly infringed one or more claims of the '597 Patent pursuant to 35 U.S.C. §§ 271(a) and 154(d)(1)(A)(i), either literally or under the doctrine of equivalents, by making, using, importing, selling, distributing, and/or offering to sell Gridpicker robots and the Gridpicker system in the United States. Brightpick's infringement is ongoing.  Attached and incorporated herein as Exhibit 30 is a claim chart demonstrating how the Gridpicker system and its robots meet all limitations of at least claim 1 of the '597 Patent.

125.    Brightpick has had knowledge of the '597 Patent since at least April 9, 2026, when Ocado's U.S. counsel notified Brightpick of its infringement.

126.    Brightpick also has indirectly infringed one or more claims of the '597 Patent pursuant to 35 U.S.C. § 271(b) by actively inducing others (including, but not limited to, its business partners and customers) to infringe the '597 Patent, by, among other things, providing instructions, manuals, technical assistance, training, and promotional materials relating to the installation, use, operation, and maintenance of Gridpicker robots and the Gridpicker system in the United States. Brightpick's inducement is ongoing.

127.    Brightpick also has contributed to the infringement of one or more claims of the '597 Patent pursuant to 35 U.S.C. § 271(c) by selling, offering to sell, or importing into the United States products, including the Gridpicker grid components and/or the robots used atop the Gridpicker storage grid, that constitute a material part of the '597 Patent's invention, that are especially made for infringing, or especially adapted for use in infringement of, the '597 Patent.

-68-

Such products, including the robots used atop the Gridpicker storage grid, are not staple articles of commerce suitable for non-infringing use. Brightpick's contributory infringement is ongoing.

### THIRD COUNT
### PATENT INFRINGEMENT
### '302 PATENT 35 U.S.C. §§ 271 AND 281

128.    Ocado incorporates and repeats all the above and below allegations by reference.

129.    Brightpick has directly infringed one or more claims of the '302 Patent pursuant to 35 U.S.C. §§ 271(a) and 154(d)(1)(A)(i), either literally or under the doctrine of equivalents, by making, using, importing, selling, distributing, and/or offering to sell Gridpicker robots and the Gridpicker system in the United States. Brightpick's infringement is ongoing.  Attached and incorporated herein as Exhibit 31 is a claim chart demonstrating how the Gridpicker system and its robots meet all limitations of at least claim 1 of the '302 Patent.

130.    Brightpick has had knowledge of the '302 Patent since at least April 9, 2026, when Ocado's U.S. counsel notified Brightpick of its infringement.

131.    Brightpick also has indirectly infringed one or more claims of the '302 Patent pursuant to 35 U.S.C. § 271(b) by actively inducing others (including, but not limited to, its business partners and customers) to infringe the '302 Patent, by, among other things, providing instructions, manuals, technical assistance, training, and promotional materials relating to the installation, use, operation, and maintenance of Gridpicker robots and the Gridpicker system in the United States.  Brightpick's inducement is ongoing.

132.    Brightpick also has contributed to the infringement of one or more claims of the '302 Patent pursuant to 35 U.S.C. § 271(c) by selling, offering to sell, or importing into the United States products, including the Gridpicker grid components and/or the robots used atop the Gridpicker storage grid, that constitute a material part of the '302 Patent's invention, that are

especially made for infringing, or especially adapted for use in infringement of, the '302 Patent. Such products, including the robots used atop the Gridpicker storage grid, are not staple articles of commerce suitable for non-infringing use.  Brightpick's contributory infringement is ongoing.

## FOURTH COUNT
## PATENT INFRINGEMENT
## '980 PATENT 35 U.S.C. §§ 271 AND 281

133.    Ocado incorporates and repeats all the above and below allegations by reference.

134.    Brightpick has directly infringed one or more claims of the '980 Patent pursuant to 35 U.S.C. §§ 271(a) and 154(d)(1)(A)(i), either literally or under the doctrine of equivalents, by making, using, importing, selling, distributing, and/or offering to sell Gridpicker robots and the Gridpicker system in the United States. Brightpick's infringement is ongoing.  Attached and incorporated herein as Exhibit 32 is a claim chart demonstrating how the Gridpicker system and its robots meet all limitations of at least claim 1 of the '980 Patent.

135.    Brightpick has had knowledge of the '980 Patent since at least April 9, 2026, when Ocado's U.S. counsel notified Brightpick of its infringement.

136.    Brightpick also has indirectly infringed one or more claims of the '980 Patent pursuant to 35 U.S.C. § 271(b) by actively inducing others (including, but not limited to, its business partners and customers) to infringe the '980 Patent, by, among other things, providing instructions, manuals, technical assistance, training, and promotional materials relating to the installation, use, operation, and maintenance of Gridpicker robots and the Gridpicker system in the United States.  Brightpick's inducement is ongoing.

137.    Brightpick also has contributed to the infringement of one or more claims of the '980 Patent pursuant to 35 U.S.C. § 271(c) by selling, offering to sell, or importing into the United States products, including the Gridpicker grid components and/or the robots used atop the

-70-

Gridpicker storage grid, that constitute a material part of the '980 Patent's invention, that are especially made for infringing, or especially adapted for use in infringement of, the '980 Patent. Such products, including the robots used atop the Gridpicker storage grid, are not staple articles of commerce suitable for non-infringing use. Brightpick's contributory infringement is ongoing.

## FIFTH COUNT
## PATENT INFRINGEMENT
## '574 PATENT 35 U.S.C. §§ 271 AND 281

138. Ocado incorporates and repeats all the above and below allegations by reference.

139. Brightpick has directly infringed one or more claims of the '574 Patent pursuant to 35 U.S.C. §§ 271(a) and 154(d)(1)(A)(i), either literally or under the doctrine of equivalents, by making, using, importing, selling, distributing, and/or offering to sell Gridpicker robots and the Gridpicker system, including the Intuition software, in the United States. Brightpick's infringement is ongoing. Attached and incorporated herein as Exhibit 33 is a claim chart demonstrating how the Gridpicker system and its robots meet all limitations of at least claim 13 of the '574 Patent.

140. Brightpick has had knowledge of the '574 Patent since at least April 9, 2026, when Ocado's U.S. counsel notified Brightpick of its infringement.

141. Brightpick also has indirectly infringed one or more claims of the '574 Patent pursuant to 35 U.S.C. § 271(b) by actively inducing others (including, but not limited to, its business partners and customers) to infringe the '574 Patent, by, among other things, providing instructions, manuals, technical assistance, training, and promotional materials relating to the installation, use, operation, and maintenance of Gridpicker robots and the Gridpicker system in the United States. Brightpick's inducement is ongoing.

142.   Brightpick also has contributed to the infringement of one or more claims of the '574 Patent pursuant to 35 U.S.C. § 271(c) by selling, offering to sell, or importing into the United States products, including the Gridpicker grid components and/or the robots used atop the Gridpicker storage grid, that constitute a material part of the '574 Patent's invention, that are especially made for infringing, or especially adapted for use in infringement of, the '574 Patent. Such products, including the robots used atop the Gridpicker storage grid, are not staple articles of commerce suitable for non-infringing use.  Brightpick's contributory infringement is ongoing.

**SIXTH COUNT**
**PATENT INFRINGEMENT**
**'405 PATENT 35 U.S.C. §§ 271 AND 281**

143.   Ocado incorporates and repeats all the above and below allegations by reference.

144.   Brightpick has directly infringed one or more claims of the '405 Patent pursuant to 35 U.S.C. §§ 271(a) and 154(d)(1)(A)(i), either literally or under the doctrine of equivalents, by making, using, importing, selling, distributing, and/or offering to sell Gridpicker robots and the Gridpicker system in the United States. Brightpick's infringement is ongoing.  Attached and incorporated herein as Exhibit 34 is a claim chart demonstrating how the Gridpicker system and its robots meet all limitations of at least claim 1 of the '405 Patent.

145.   Brightpick has had knowledge of the '405 Patent since at least April 9, 2026, when Ocado's U.S. counsel notified Brightpick of its infringement.

146.   Brightpick also has indirectly infringed one or more claims of the '405 Patent pursuant to 35 U.S.C. § 271(b) by actively inducing others (including, but not limited to, its business partners and customers) to infringe the '405 Patent, by, among other things, providing instructions, manuals, technical assistance, training, and promotional materials relating to the installation, use, operation, and maintenance of Gridpicker robots and the Gridpicker system in the United States.  Brightpick's inducement is ongoing.

147.   Brightpick also has contributed to the infringement of one or more claims of the '405 Patent pursuant to 35 U.S.C. § 271(c) by selling, offering to sell, or importing into the United States products, including the Gridpicker grid components and/or the robots used atop the Gridpicker storage grid, that constitute a material part of the '405 Patent's invention, that are especially made for infringing, or especially adapted for use in infringement of, the '405 Patent. Such products, including the robots used atop the Gridpicker storage grid, are not staple articles of commerce suitable for non-infringing use.  Brightpick's contributory infringement is ongoing.

**SEVENTH COUNT**
**PATENT INFRINGEMENT**
**'832 PATENT 35 U.S.C. §§ 271 AND 281**

148.   Ocado incorporates and repeats all the above and below allegations by reference.

149.   Brightpick has directly infringed one or more claims of the '832 Patent pursuant to 35 U.S.C. §§ 271(a) and 154(d)(1)(A)(i), either literally or under the doctrine of equivalents, by making, using, importing, selling, distributing, and/or offering to sell Gridpicker robots and the Gridpicker system in the United States. Brightpick's infringement is ongoing.  Attached and incorporated herein as Exhibit 35 is a claim chart demonstrating how the Gridpicker system and its robots meet all limitations of at least claim 1 of the '832 Patent.

150.   Brightpick has had knowledge of the '832 Patent since at least April 9, 2026, when Ocado's U.S. counsel notified Brightpick of its infringement.

151.   Brightpick also has indirectly infringed one or more claims of the '832 Patent pursuant to 35 U.S.C. § 271(b) by actively inducing others (including, but not limited to, its business partners and customers) to infringe the '832 Patent, by, among other things, providing instructions, manuals, technical assistance, training, and promotional materials relating to the

installation, use, operation, and maintenance of Gridpicker robots and the Gridpicker system in the United States. Brightpick's inducement is ongoing.

152. Brightpick also has contributed to the infringement of one or more claims of the '832 Patent pursuant to 35 U.S.C. § 271(c) by selling, offering to sell, or importing into the United States products, including the Gridpicker grid components and/or the robots used atop the Gridpicker storage grid, that constitute a material part of the '832 Patent's invention, that are especially made for infringing, or especially adapted for use in infringement of, the '832 Patent. Such products, including the robots used atop the Gridpicker storage grid, are not staple articles of commerce suitable for non-infringing use. Brightpick's contributory infringement is ongoing.

### EIGHTH COUNT
### PATENT INFRINGEMENT
### '770 PATENT 35 U.S.C. §§ 271 AND 281

153. Ocado incorporates and repeats all the above and below allegations by reference.

154. Brightpick has directly infringed one or more claims of the '770 Patent pursuant to 35 U.S.C. §§ 271(a) and 154(d)(1)(A)(i), either literally or under the doctrine of equivalents, by making, using, importing, selling, distributing, and/or offering to sell Gridpicker robots and the Gridpicker system, including the Intuition software, in the United States. Brightpick's infringement is ongoing. Attached and incorporated herein as Exhibit 36 is a claim chart demonstrating how the Gridpicker system and its robots meet all limitations of at least claim 1 of the '770 Patent.

155. On information and belief, Brightpick has had knowledge of the '770 Patent and its infringement since at least April 9, 2026, when Ocado's U.S. counsel notified Brightpick of its infringement of the '651, '597, '302, '980, '574, '405, and '832 Patents.

156. Brightpick also has indirectly infringed one or more claims of the '770 Patent pursuant to 35 U.S.C. § 271(b) by actively inducing others (including, but not limited to, its

business partners and customers) to infringe the '770 Patent, by, among other things, providing instructions, manuals, technical assistance, training, and promotional materials relating to the installation, use, operation, and maintenance of Gridpicker robots and the Gridpicker system in the United States.  Brightpick's inducement is ongoing.

157.    Brightpick also has contributed to the infringement of one or more claims of the '770 Patent pursuant to 35 U.S.C. § 271(c) by selling, offering to sell, or importing into the United States products, including the Gridpicker grid components and/or the robots used atop the Gridpicker storage grid, that constitute a material part of the '770 Patent's invention, that are especially made for infringing, or especially adapted for use in infringement of, the '770 Patent. Such products, including the robots used atop the Gridpicker storage grid, are not staple articles of commerce suitable for non-infringing use.  Brightpick's contributory infringement is ongoing.

## JURY DEMAND

158.    Ocado requests a jury trial of all issues in this Action so triable.

## PRAYER FOR RELIEF

WHEREFORE, Ocado requests judgment in its favor and relief:

A.      Adjudging, finding, and declaring that Brightpick has infringed and continues to infringe the Patents-in-Suit.

B.      Adjudging, finding, and declaring that Brightpick's infringement has been and continues to be willful.

C.      An Order enjoining Brightpick from infringing the Patents-in-Suit, and enjoining Brightpick's officers, agents, servants, employees, and those persons in active concert or participation with them, from infringing the Patents-in-Suit.

D.      An Order requiring Brightpick, to the extent permitted by contract or law, to (i) retrieve from its business partners and customers any software, robots, or other  hardware that

is being used as part of an infringing system or being used in an infringing manner, and (ii) instruct its business partners and customers that any software, robots, or other hardware that originated from Brightpick or its business partners cannot be used as part of an infringing system or used in an infringing manner.

E.      Awarding Ocado an accounting and lost profits in a sum to be determined at trial.

F.      Awarding Ocado compensatory damages in a sum to be determined at trial, but no less than a reasonable royalty pursuant to the Patent Act.

G.      Awarding Ocado pre- and post-judgment interest.

H.      Awarding Ocado enhanced damages, as allowed by the Patent Act.

I.      Awarding Ocado their reasonable attorneys' fees, costs, and disbursements in this Action, as allowed by the Patent Act.

J.      Granting Ocado such other and further relief as is just and proper.

Date:  June 30, 2026

Respectfully submitted,

/s/ *John M. Erbach*
John M. Erbach (Va. Bar No. 76695)
Nancy Y. Simpson (Va. Bar No. 97230)
SPOTTS FAIN, PC
411 E. Franklin Street
Richmond, VA 23219
Tel:  (804) 697-2000
Fax: (804) 697-2100
Email: jerbach@spottsfain.com
        nsimpson@spottsfain.com

Dustin F. Guzior (*pro hac vice*)
Garrard R. Beeney (*pro hac vice*)
Laurie N. Stempler (*pro hac vice*)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY 10004
Tel:  (212) 558-4000
Email: guziord@sullcrom.com
        beeneyg@sullcrom.com
        stemplerl@sullcrom.com